## ARTHUR KEITHLEY

*v.*

## WILLIAM STAFFORD.

*Filed at Ottawa November 15, 1888.*

1. WITNESS—*competency—party in suit to contest a will, who is also a devisee.* On a bill by an heir to set aside the will of his father, one of the defendants, the widow of a deceased son of the testator, to whom was given a legacy of $500 and an annuity of $180 for life, is a competent witness for the purpose of showing the want of testamentary capacity in the testator, her interest being to support the will.

2. SAME—*practice—time to disclose prior will, as showing an adverse interest.* In such case, if there is a prior will containing more favorable provision for the party proposing to testify, so as to make it to her interest to have the will in controversy set aside, that fact should be shown on the question of her competency, and objection should be made on that ground at the trial, otherwise such objection can not be availed of on appeal.

3. WILLS—*presumption—as to knowledge of contents.* In the absence of evidence to the contrary, the law will presume that a person who executes a will or other instrument, does so with knowledge of its contents; but this is a presumption which will readily yield to evidence tending to show that such was not the fact.

4. SAME—*testamentary capacity—evidence—opinions of witnesses.* Witnesses who have had opportunities for knowing and observing the conversation, conduct and manner of a person whose sanity is in question, may depose not only to particular facts, but to their opinions or belief as to his sanity, formed from actual observation; but whether the party has that quantum of intelligence or mental capacity necessary to enable him to make a legal disposition of his estate, involves a question of law for the court to determine, and not for the witnesses. The witnesses may, however, be asked whether the party, at the time of executing his will, was capable of transacting ordinary business.

5. SAME—*testamentary capacity defined—instructions.* On the trial of a contest of a will by bill in chancery, the court, on behalf of the complainant, instructed the jury, "that the burden of proof in this case, in the first instance, is upon the proponents of said pretended will, to show that at the time of the execution of the alleged will the said E. H. was of sound mind and memory. By sound mind and memory is meant that his mind and memory were such as to be able to transact the ordinary business of life:" *Held*, that there was no error in the instruction.

The use of the words "of sound mind and memory," being in the language of the statute defining testamentary capacity, did not render the instruction erroneous.

6. There is no substantial error in an instruction holding that if it was proved that the testator "was so diseased, mentally, that he was incapable, by reason of mental weakness, caused by disease or other derangement, of acting rationally in the ordinary affairs of life, and of intelligently comprehending the disposition he was making of his property, and the nature and effect of the provisions of said pretended will, the verdict should be for the contestant." The use of the word "intelligent" instead of "reasonable" comprehension, did not render the instruction erroneous.

7. SAME—*presumption arising from probate—instruction.* On the contest of a will in chancery, the proponents of the will asked this instruction, which was refused: "In this case, the certificate of the oath of the subscribing witnesses at the time the will was admitted to probate, is *prima facie* proof, and therefrom the law presumes that the instrument so attested is the will of the said E. H., and that he was, at the time of its execution, of sound, disposing mind and memory, and that the will was not procured by any fraud or undue influence:" *Held,* properly refused, as containing an incomplete statement of the law, and as ignoring the evidence to rebut such presumption.

8. SAME—*contest of will—characterizing the will as a "pretended" will—instruction.* On the contest of a will, it is not proper for the court, in some of the instructions, to allude to the paper as the "pretended" will; but when this court can see, taking all the. instructions together, that the jury could not have been led, by the use of the word, to believe that the court intended to discredit the will and intimate it was spurious, the error will not be such as to call for a reversal.

9. SAME—*new trial on the evidence as to mental capacity.* Where the evidence tends strongly to show that the testator's mental faculties were so far weakened and impaired by sickness, and the bewilderment and delirium occasioned thereby, as to render him incapable of knowing and understanding the business in which he was engaged at the time of executing his will, the verdict of the jury finding a want of mental capacity in the testator will not be disturbed by this court.

APPEAL from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

This was a bill in chancery, brought by Elizabeth James, by William Stafford her conservator, against Arthur Keithley, Nancy Heaton, Alice Heaton, Edmond Heaton and Albert

James, to contest the validity of the last will and testament of Edmond Heaton, deceased. On the 20th day of February, 1887, said Edmond Heaton died, leaving surviving him his daughter Elizabeth James and her son Albert James, and also his daughter-in-law Nancy Heaton, the widow of a deceased son, and her two children Alice and Edmond Heaton. The deceased, at the time of his death, was free from debt, and was the owner of a farm worth about $6000, and personal property of the value of about $8000 or $9000. One week before he died and during his last illness he executed a document purporting to be his last will and testament as follows:

"I, Edmond Heaton, hereby declare the following to be my will, intending hereby to revoke and annul all other wills by me heretofore made.

"1st. I will, devise and bequeath unto Arthur Keithley all of the property, both real and personal, that I may own at the time of my decease, upon the following express conditions and trusts: That he reduce all my stock, choses in action and credits to money as soon as practicable after my death.

"2d. That he give my daughter-in-law, Nancy Heaton, $500 in money within six months after my death.

3d. That he give to my daughter Elizabeth $90 per year each year during her life, to be paid to her in three equal payments, the first payment, ($30) to be paid her at the expiration of four months after my death.

"4th. That he give to Nancy Heaton aforesaid $180 each year during her life, exclusive of the $500 above given to her, the first payment to be made to her at the expiration of one year from my death.

"5th. My said trustee is to rent my land to the best advantage, always giving to said Nancy the preference and refusal of the same at the price and terms offered by any other person.

"6th. My trustee shall invest the funds coming to him from my estate in some safe, prudent manner, and render a strict

account of his actions and doings, and shall re-invest the income from said funds, subject to the above payments and legacies.

"7th. When any of my grandchildren shall arrive at his or her majority, he or she, as the case may be, shall be paid by my trustee $500.

"8th. All of my estate shall remain in my said trustee or his successor which shall be appointed by the circuit court of this county, until the death of both said Elizabeth and said Nancy, when he shall settle his accounts and be discharged, and the whole of what may be in his hands and belonging to my estate, both real and personal, shall descend to my grandchildren in equal parts, to be theirs absolutely and forever.

"9th. It is my will that my said trustee, or his successor, be paid and allowed liberal compensation for his services as trustee.

"10th. I hereby appoint Arthur Keithley executor as well as trustee of this my will.

"Witness my hand and seal this February 13th, 1887.

EDMOND HEATON.    (Seal.)

"We, the undersigned, at the request of Edmond Heaton and in his presence, and in the presence of each other, subscribe our names as attesting witnesses to said signature, this February 13th, 1887.    DANIEL B. THORPE,

JOHN VOLZ."

Said will was duly admitted to probate and letters testamentary were issued thereon to Keithley, who qualified and took upon himself the management of said estate. Heaton, at the time of his death, was a man about sixty-five years of age. The sickness of which he died, and which some of the witnesses say was bronchitis and others typhoid pneumonia, resulted from a severe cold contracted while doing some work on his farm in the rain. On the 9th of February he became so ill as to be confined to his bed, where he remained until

his death, and it was during said sickness that his will was executed.

Said will was drawn by Keithley, who had been Heaton's attorney and legal adviser for several years and had been named by him as executor in a former will. The bill alleges that said will is not the will of said Heaton; that at the time of its execution Heaton was not of disposing mind and memory, but that his mind was so weakened and impaired by the malignant fever and disease under which he was suffering as to render him wholly incapable of knowing what he was doing or of making any just and proper distribution of his estate. The bill also charges Keithley with the use of fraud, false representations and undue influence to induce said Heaton to execute said will, and of inserting therein provisions for his own benefit and advantage without the knowledge of said Heaton. Also that Keithley after writing the will, neglected and refused to read it to said Heaton, and that said Heaton signed it without knowing its contents.

Nancy Heaton was defaulted and the bill was taken *pro confesso* as to her. The three grandchildren of the testator, being infants, answered by their guardians *ad litem.* Keithley answered denying the equities of the bill, and replications being filed, the following issue was submitted to the jury, viz: "Was the paper-writing propounded as the last will and testament of Edmond Heaton, deceased, the last will of said testator or not?"

The following special issues of fact were also submitted to the jury by the court in the instructions, viz:

"First. Was the said Edmond Heaton, at the time he executed said alleged will, in such condition of mind and memory as to be capable of transacting the ordinary business of life?

"Second. Did the said Edmond Heaton, before and at the time of the execution of said alleged will, know the contents and provisions of the same and the manner in which he was disposing of his estate?"

The jury at the trial answered both the special questions of fact submitted to them in the negative, and found by their general verdict that the will propounded was not the will of said Heaton. The court, thereupon, after denying a motion by Keithley, the proponent of the will, for a new trial, and also a like motion on behalf of Albert James by his guardian *ad litem*, entered a decree in accordance with the verdict, and Keithley alone has perfected an appeal to this court. Both Keithley, and Albert James by his guardian *ad litem*, have appeared in this court and assigned errors, and upon these assignments of error the complainant has joined in error.

Mr. H. W. WELLS, for the appellant:

Delirium is due to entirely different causes, and attended with entirely different consequences, from insanity, senile dementia, or any other mental infirmity. It is fleeting in its nature. Its existence, if shown, raises no presumption of its continuance. In fact, the presumption is, that after the lapse of a reasonable time, or when the disturbing cause is removed, delirium will cease. Redfield on Wills, (3d ed.) p. 81, sec. 3; *Hix* v. *Whittemore*, 4 Metc. 545; *Townshend* v. *Townshend*, 7 Gill, 10.

The delirium of disease rises and falls with the disease. Redfield on Wills, (3d ed.) p. 81, sec. 3; *Trish* v. *Newell*, 62 Ill. 200; *Schneider* v. *Manning*, 121 id. 386.

Flightiness, or wandering of intellect during sickness, is of very little importance. Redfield on Wills, (3d ed.) p. 116; *McMasters* v. *Blair*, 29 Pa. St. 298.

If the delusion or delirium is that caused by disease, it is obviously temporary in its character. It will continue only during the existence of the fever in which it originated. There is no presumption of its continuance. *Staples* v. *Wellington*, 58 Me. 460.

Nancy Heaton, being a party to the suit, was not a competent witness. *Wagenseller* v. *Prettyman*, 12 Bradw. 341;

*Boynton* v. *Phelps,* 52 Ill. 219; *Merrill* v. *Atkin,* 59 id. 19; *Whitmer* v. *Rucker,* 71 id. 412.

One of the crucial tests of mental health, soundness and competency, is memory. Taylor's Med. Jur. 675; *Hathorn* v. *King,* 8 Mass. 371; *Mack* v. *Bryant,* 4 H. & M. 91.

The use of the word "pretended," in the instructions, as applied to the will, was improper and highly injurious. *McGirr* v. *Hunter,* 13 Bradw. 199.

The probate of the will was *prima facie* evidence of its validity. *Holloway* v. *Galloway,* 51 Ill. 161; *Carpenter* v. *Calvert,* 83 id. 71; *Buchanan* v. *McClellan,* 105 id. 59.

The second of contestant's instructions was erroneous. It virtually told the jury that unless Heaton was mentally able to transact the ordinary business of life, he was not competent to make a will. A party may be so mentally diseased as not to be of sound mind, and yet may possess a disposing mind. 1 Jarman on Wills, 51; *McClintock* v. *Curd,* 32 Mo. 419; *Trish* v. *Newell,* 62 Ill. 205; *Brown* v. *Riggin,* 94 id. 569; *Freeman* v. *Easly,* 117 id. 320; *Rutherford* v. *Morris,* 77 id. 397; *Meeker* v. *Meeker,* 75 id. 260.

The law has never gone so far as to require a testator to intelligently comprehend the nature and effect of the provisions of his will. All that can be said is, he must reasonably understand the business he is engaged in at the time the will is executed. *Brown* v. *Riggin,* 94 Ill. 569; *Trish* v. *Newell,* 62 id. 205; *Freeman* v. *Easly,* 117 id. 320.

Mr. W. T. WHITING, for the appellee:

As to the test and evidence of mental capacity, see *Holloway* v. *Galloway,* 51 Ill. 159; *Meeker* v. *Meeker,* 75 id. 260; *Bible Society* v. *Price,* 115 id. 623; *Yoe* v. *McCord,* 74 id. 33; *Trish* v. *Newell,* 62 id. 196.

Nancy Heaton was a competent witness. Rev. Stat. 1874. chap. 51, sec. 2.

The use of the word "pretended," in reference to the will, could not have misled the jury, even if it was improper; and the presumption will be indulged by the court, that the jury understood the instructions as they commonly impress the mind. *Green* v. *Lewis*, 13 Ill. 642; *Worden* v. *Salter*, 90 id. 160; *Life Ins. Co.* v. *Robinson*, 98 id. 324; *Gilchrist* v. *Gilchrist*, 76 id. 281; *Pierce* v. *Hasbrouck*, 49 id. 23.

The principle of law as announced in the first instruction is warranted by the statute of Illinois and the following decisions: *Rigg* v. *Wilton*, 13 Ill. 15; *Holloway* v. *Galloway*, 51 id. 159; Rev. Stat. chap. "Wills," sec. 7.

The third instruction for contestant announces a correct rule of law, and does not assume any facts. It directs the jury that should they believe, from the evidence, that Edmond Heaton was so diseased, mentally, that he was incapable of acting rationally in the ordinary affairs of life, or intelligently comprehending the disposition he was making of his property, and the nature and effect of the provisions of his will, then they might find for contestant. The rule of law announced in this instruction has been many times sanctioned by this court, and in the case of *Meeker* v. *Meeker*, 75 Ill. 260, the court has gone further, and said that the derangement must be of that character which renders a person "incapable of understanding the effect and consequences of his act." *Meeker* v. *Meeker*, 75 Ill. 260; *Brown* v. *Riggin*, 94 id. 560.

Mr. NICHOLAS ULRICH, for the minor heirs.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

At the trial, Nancy Heaton, one of the defendants and a legatee under the will, was called as a witness by the complainant to prove the want of testamentary capacity of Edmond Heaton at the time he executed the will. Her testimony was objected to by Keithley, who was a co-defendant and the proponent of the will, as incompetent, which objection was

overruled by the court, and the admission of said testimony is now assigned for error.

It is claimed that said witness was incompetent under the provisions of the second section of the statute in relation to evidence and depositions. The first section of the statute removes the common law disqualification of witnesses in civil actions, suits ·and proceedings by reason of their interest in the event thereof, as a party or otherwise, except as therein-after provided, and the second section provides that no party to such action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion or in his own behalf, by virtue of the preceding section, when any adverse party sues or defends as the exec-utor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending.

We are unable to perceive how the admission of the testi-mony of this witness in any way contravened the provisions of this statute. She did not testify as a witness on her own motion, but was called by the complainant who was not only, in form, the opposite party suing as the heir of a deceased person, but a party whose interests in the subject matter of the litigation were in all respects adverse to those of the wit-ness. Nor can she be said to have been permitted to testify in her own behalf. She was the widow of a deceased son of the testator, her husband having died while the testator was yet alive. She therefore had and could have no interest in the estate of the testator by descent. Her only interest was that derived from the will, viz., a legacy of $500 in cash and an annuity for life of $180. Her right to this legacy depended upon the maintenance of the will. She was called as a wit-ness by the party who was seeking to defeat the will, and the tendency of her testimony was to show a want of testamentary capacity in the testator at the time the will ·was executed.

Her testimony therefore was clearly against her interest. *Remann* v. *Buckmaster,* 85 Ill. 403.

But it is said that a former will of the testator, more favorable to the witness in its provisions, was in existence, and that if the will in controversy should be set aside, such former will would be entitled to be probated as the will of the testator. It is argued therefore that the interest of the witness preponderated in favor of the former will, and that to that extent she was permitted to testify as a witness in her own behalf. Without pausing to determine how far her competency might have been affected, if at all, by the provisions of the former will, it is sufficient to say that no such objection to her competency was made at the trial. At the time she was called as a witness no suggestion was made as to the existence of a former will. After she and the other witnesses for the complainant had testified and the complainant was about to close her case, she called Keithley to the witness stand and asked him whether he had another will executed by the testator, to which he replied that he had such will in his pocket but declined to produce it. The court being asked to order a production of said will, reserved its decision. After the evidence for the defendants was completed and they had rested, the complainant renewed her motion, which being sustained, the will was produced. Its execution was then proved by two of the subscribing witnesses, and it was read in evidence by the complainant, but no motion was then interposed by the defendants to exclude the testimony of Nancy Heaton, nor was any suggestion made that her competency was in the least affected by the provisions of said will. It is clear that under these circumstances the defendants are now in no position to avail themselves of the provisions of the former will as tending to establish the incompetency of Nancy Heaton as a witness.

The complainant alleges that the will in controversy is not the will of Edmond Heaton, deceased, and the validity of said will is attacked by the averments of the bill on three grounds,

viz: 1. That at the time of its execution the testator was not of disposing mind and memory, but that his mind was so weakened and impaired by the malignant fever and disease under which he was suffering, as to render him wholly incapable of knowing what he was doing or of making any just and proper distribution of his estate. 2. That Keithley made use of fraud, false representations and undue influence to induce the testator to execute said will and to insert therein provisions for his, Keithley's, benefit and advantage, without the knowledge of the testator. 3. That Keithley, after writing the will, neglected and refused to read it to the testator, and that the testator signed it without knowing its contents. No evidence was introduced tending to sustain the second of these allegations, and the verdict and decree must therefore rest entirely upon the evidence applicable to the two other issues raised by the bill.

Upon the issue as to whether the testator, at the time of the execution of the will, knew its contents and provisions, there is very little if any conflict in the evidence. The question is not as to the preponderance of the evidence, but as to whether the undisputed evidence is sufficient to warrant the conclusion that the will was not read to the testator and that he did not know its contents at the time he signed it. Nancy Heaton testifies that during all the time it was being drawn, and up to the time it was signed and taken away by Keithley, she was either in the room in which the testator was lying or in the room adjoining, and was all the time in a position where she would have heard the reading of the will if it had been read, and that she did not hear it read. Thorpe, one of the witnesses to the will, testifies that he called to see the testator on the day the will was executed and found Keithley in the room writing at a desk; that after talking with the testator a minute or two, he went out into the adjoining room and sat there until called by Keithley to witness the will; that during all that time the door between the rooms was partly open, and

that he was so situated as to be able to hear the voice of a person in conversation or reading in the room where the testator and Keithley were; that he did not hear any continued conversation or reading, and that if there had been any he would have heard it. There is also evidence that on one or more occasions on subsequent days the testator inquired of those about him whether Keithley had got his will as he wanted it, and proposed to have him sent for, thus evidencing an ignorance on his part as to the contents of the will. On the day of his death, Keithley being present, the testator again asked him if the will was all right. These facts, together with the evidence of the mental as well as physical condition of the testator at the time the will was executed, were before the jury, and it was for them to put upon them such construction as they would fairly and reasonably bear. There was no contradictory evidence. It is true the law, in the absence of all evidence, will presume that a person who executes a will or other instrument, does so with knowledge of its contents, but this is a presumption which will readily yield to evidence tending to show that such was not the fact. The question presented by the foregoing evidence was purely a question of fact for the jury, and they having considered it and reached the conclusion that the will was not read to the testator, we can not say that their finding is unwarranted by the evidence. There certainly was evidence tending to support the verdict, and in the absence of countervailing evidence, upon familiar principles of law, the verdict must stand.

Upon the question of the testamentary capacity of Heaton at the time he executed said will the evidence is conflicting. It is not disputed that he was suffering at the time from a very severe and dangerous illness, an illness which one week later resulted in his death. The evidence tends to show that on the day the will was executed he had a high fever and was to a very considerable degree delirious. John Volz, one of the witnesses to the will, saw him shortly before the will was

drawn. This witness testifies that he seemed bewildered and did not appear to know at first what was said to him; that when aroused he would answer a question, and then turn away and doze again and commence talking incoherently to himself something the witness could not understand; that when aroused and spoken to again he turned back and was laughing, and seemed to be thinking about something else. Nancy Heaton who was with him and took care of him during his sickness testifies, that he was restless and feverish the previous day and night; that he got up and went to the next room and attempted to pour himself some tea and was there tottering about the room, until the witness, with the help of Elizabeth James who was present, got him back to bed again; that at the time the will was being written his skin was dry and hot and his face red and feverish; that she was bathing his hands and face and he asked for a drink of cider; that she brought him some sweet cider which he refused to drink saying that it was not cider; that shortly after the will was executed and Keithley had gone away, he commenced talking and muttering to himself, and when she went to him and got him to know who she was, he would say, "Oh, I thought I was talking to Keithley;" that an hour or two after the execution of the will he got out of bed, staggered to the door, opened it and was going out, and when the witness attempted to get him back he asked why she did not let him go, as it was hot in there, there being in fact no fire in the room. Some other witnesses were examined whose testimony tended to show that the testator, though very sick, was capable of acting rationally in the ordinary affairs of life, and of comprehending the disposition he wished to make of his property.

The jury, in view of all the evidence, reached the conclusion that his mental faculties were so far weakened and impaired by his sickness and the bewilderment and delirium occasioned thereby, as to render him incapable of knowing and understanding the business in which he was engaged at the time he

executed the will. It can not be doubted that the evidence on behalf of the complainant strongly tended to support that conclusion, and the jury having so found, we see no ground for disturbing their verdict as being unsupported by the evidence.

Witness Nancy Heaton, after having testified fully as to all the facts within her knowledge in relation to the testamentary capacity of the testator, was asked, and, against the objection and exception of Keithley and the guardian *ad litem* of Albert James, was permitted to answer, the following questions: "Ques. In your opinion do you think Edmond Heaton was, at the time he made this will, of sound mind and able to understand what he was doing at the time? Ans. He was too sick a man. Ques. Was Edmond Heaton on that day capable of transacting ordinary business? Ans. I think not." The decision of the court in permitting these questions to be answered is assigned for error, and in support of said assignment we are referred to the decision of this court in *Schneider* v. *Manning*, 121 Ill. 376.

The question asked and answered in that case differed from those under consideration here in that it called for the opinion of the witness, not merely as to the sanity of the testator and his capability of transacting ordinary business, but of his mental capacity to dispose of his property by will or deed. Whether a party has that *quantum* of intelligence or mental capacity which is necessary to enable him to make a legal disposition of his estate involves a question of law for the court to determine and not for the witness. The great preponderance of authority in this country, however, is in favor of the proposition that witnesses who have had opportunities for knowing and observing the conversation, conduct and manners of the person whose sanity is in question, may depose not only to particular facts, but to their opinions or belief as to the sanity of the party, formed from actual observation. *Farrell's Administrator* v. *Brennan's Administrator*, 32 Mo. 328; *State* v. *Pike*, 49 N. H. 399; (see dissenting opinion of DOE, J.,

in which all the authorities on this subject are collected;) *Hardy* v. *Merrill,* 56 N. H. 227, in which the authorities are fully discussed, and the dissenting opinion of Doe, J. in *State* v. *Pike* is adopted.

If, however, we were compelled to hold that there was error in permitting the questions complained of to be answered, such error must be held, on the authority of *Schneider* v. *Manning, supra,* not to be an error of such magnitude as to necessitate a reversal of the decree.

In several of the instructions given by the court to the jury at the instance of the complainant, the will in controversy is alluded to as the *pretended* will. The use of this word in such connection is justly criticised, but we are of the opinion that, in view of all the instructions, the jury could not have been misled by its use into the belief that the court thereby intended to discredit the will, or to intimate an opinion that it was spurious. While we can not approve of the language of the instructions in this respect, we are of the opinion that, under all the circumstances, no material prejudice has resulted to the defendants.

It is claimed that the second instruction given at the instance of the complainant is erroneous. It is as follows:

"You are instructed that the burden of proof in this case, in the first instance, is upon the proponents of said pretended will, to show that at the time of the execution of the alleged will, the said Edmond Heaton was of sound mind and memory. By sound mind and memory is meant that his mind and memory was such as to be able to transact the ordinary business of life."

It is suggested that this instruction is erroneous in requiring proof that the testator, at the time he executed the will in question, was of sound mind and memory, it being suggested that a party may be so diseased mentally as not to be of "sound mind," and yet possess what the law terms a "disposing mind." It is a sufficient answer to this criticism to say

that in this respect the instruction follows the exact language of the statute. The first section of the Statute of Wills, in prescribing who shall be capable of making wills, provides, "That every male person of the age of twenty-one years, and every female of the age of eighteen years, *being of sound mind and memory*, shall have power to devise all their estate, etc., by will and testament." A sound mind and memory, within the meaning of the statute, is thus made a necessary qualification for a testator in order to the execution of a valid will. While it may be that it was not the intention of the statute to introduce any essential modification of the common law rule in this respect, it can not be said that an instruction which uses the very words of the statute is erroneous for that reason.

But objection is made to the explanation or definition given by the instruction of the statutory words, "sound mind and memory," viz., that it is that condition of mind and memory which would render the testator capable of transacting the ordinary business of life. This, it is said, is too broad, and calls for a higher degree of mental capacity than the law requires. No set form of words has been adopted as forming the exclusive equivalent of the words "sound mind and memory." As said by this court in *Trish* v. *Newell*, 62 Ill. 196, "It is probable that no court has ever attempted to lay down any definite rule in respect to the exact amount of mental capacity requisite to the making of a valid will, without appreciating the difficulty of the undertaking." It is true, in the case last cited, the formula adopted by Jarman in his Treatise on Wills as the most simple and intelligible form in which to submit the question to a jury, is cited with approval, viz., "Were the mind and memory of the testator sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed his will?" But the form in which the question was submitted by the instruction in this case has also been repeatedly approved or recognized by this court, doubtless upon the theory that the two forms

of expression are substantially equivalent. Thus, in *Brown* v. *Riggin*, 94 Ill. 560, it is said: "The question of capacity involves the simple inquiry, whether the testatrix was or was not, at the time in question able to understand and reasonably transact the ordinary business of life. Was she able to buy and sell and collect accounts? Did she understand the business in which she was engaged?" In *Meeker* v. *Meeker*, 75 Ill. 260, the same rule is adopted, it being there said that "The usual test is, that the party be capable of acting rationally in the ordinary affairs of life." See also, *Rutherford* v. *Morris*, 77 Ill. 397; *Freeman* v. *Easly*, 117 id. 317. It would indeed be difficult to conceive of a case of a testator whose mind and memory were so weakened and impaired by disease as to render him incapable of understanding or transacting matters in relation to his ordinary business, and who would at the same time have sufficient mental capacity and vigor to understand and transact the more important business of disposing of his entire estate by will.

We think, for the reasons above stated, that there was no substantial error in the complainant's third instruction in which it was held that if it was proved that the testator "was so diseased mentally that he was incapable, by reason of mental weakness caused by disease or other derangement, of acting rationally in the ordinary affairs of life and of intelligently comprehending the disposition he was making of his property, and the nature and effect of the provisions of said pretended will," the verdict should be for the complainant. Fault is found with the use of the word "intelligent" as requiring a higher degree of understanding than the rules of law require. It is admitted that there should be a capacity to reasonably understand or comprehend the business in which the testator was engaged in making his will, but it is argued that an "intelligent comprehension" is something more than a "reasonable comprehension." As every act of comprehension or understanding is necessarily an act of intelligence, we can not see

how the use of the word could have been materially prejudicial to the defendants.

The defendants asked the court to give to the jury the following instruction which was refused, and its refusal is assigned for error:

"In this case the certificate of the oath of the subscribing witnesses at the time the will was admitted to probate, is *prima facie* proof, and therefrom the law presumes that the instrument so attested, is the will of the said Edmond Heaton, and that he was at the time of its execution of sound, disposing mind and memory, and that the will was not procured by any fraud or undue influence."

It is sufficient to say, that the giving of this instruction without qualification, would have been likely to mislead the jury into the belief that the presumption which the law raised from the proof received at the probate of the will was a conclusive one. The instruction was only an incomplete statement of the law applicable to the case. It should have contained the qualification that the legal presumption would be as stated unless or until rebutted by proof showing the contrary to be the fact. An incomplete statement of a rule may often be quite as prejudicial as a false statement of the rule. It would have been peculiarly so in this case, there being evidence sufficient to overcome the presumption stated, and which the instruction wholly ignored.

Other points are alleged by the appellant which we need notice no further than to say, that we have duly considered them and are of the opinion that none of them are well taken. As we find no material error in the record, the judgment will be affirmed.

*Judgment affirmed.*