In re Estate of JOHN P. GLASS, Deceased, I. O. GLASS and others, Proponents, Appellants, v. JASPER D. GLASS and others, Contestants.

**Will contest:** DISQUALIFICATION OF JUDGE. A district judge is not 1   disqualified under Code, section 284, from determining a will contest, grounded upon undue influence and incapacity, by reason of the fact that the firm of which he was a member prior to his election nominally joined with the principal attorneys in issuing an original notice, only, in an action brought by some of the contestants to partition certain land disposed of by the will, the issues not being identical.

**Mental capacity:** EVIDENCE. A nonexpert witness should not be 2   permitted to testify in effect that a testator was incapable of disposing of his property, but should disclose his mental characteristics from which the degree of capacity may be determined.

**Undue Influence:** SUBMISSION OF ISSUE. Where both undue in- 3   fluence and incapacity are relied upon to defeat a will, substantial evidence of incapacity will authorize a submission of the issue of undue influence upon slight proof thereof.

**Construction.** The question of whether a trust deed executed prior 4   to a will was a part thereof is one of law.

**Evidence:** DECLARATION OF DECEDENT. In a will contest on the 5   ground of incapacity and undue influence, a prior trust deed executed when the testator was admittedly competent and not

under the influence of others, is competent evidence as a written declaration of decedent.

**Mental incapacity:** PRESUMPTION: BURDEN OF PROOF. Where a permanent mental unsoundness of mind is not shown, a presumption of its existence such as will throw the burden of proof on the proponents of a will to establish a lucid interval, does not arise.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

WEDNESDAY, JUNE 14, 1905.

THE will of John P. Glass was offered for probate and contested on the grounds of mental incapacity and undue influence. There was a trial to a jury, and a verdict and judgment for the contestants. The proponents appeal.— *Reversed.*

*Heins & Heins* and *Dawley, Hubbard & Wheeler,* for appellants.

*Smith & Smith* and *Flickinger Bros.,* for appellees.

SHERWIN, C. J.— John P. Glass died on the 14th day of February, 1900, and on the 22d day of the same month an instrument purporting to be his will was filed for probate. Objections thereto were filed on the 20th day of March, 1900. A part of the land of which Mr. Glass died seised had come to him through a conveyance from John Dodge to his wife, Eliza A. Glass, and after the death of Mr. Glass, and after the contest over his will had arisen, as we understand the record, an action was brought by some of the contestants herein claiming title to a portion of the land so conveyed by John Dodge to Eliza A. Glass, and asking a partition thereof on the ground that Eliza A. Glass took only a life estate under the deed. Flickinger Bros., of Council Bluffs, Iowa, were the plain-

1. WILL CONTEST: disqualification of judge.

tiffs' original attorneys in the partition suit. At that time Judge Preston was a member of the law firm of Preston, Grimm & Moffit, of Cedar Rapids, Iowa, in the county where the suit was to be brought. After some correspondence between Flickinger Bros. and Mr. Grimm, an original notice in that action was drawn by Judge Preston and signed "Flickinger Bros. and Preston, Grimm & Moffit," and the petition in the case bore the same signature. Before the issues were finally settled, however, Judge Preston was elected to the district bench, and his name did not appear further as an attorney in the case. As a matter of fact, he had never consulted with any one about the merits of the case, and knew nothing thereof, and the record shows conclusively that his firm's connection therewith was at that time, at least, only nominal, and for the accommodation of Flickinger Bros. The proponents objected to trying the instant case before Judge Preston on the ground that he was disqualified under section 284 of the Code, which disqualifies a judge where he has been attorney for either party in the action or proceeding, and it is now insisted that Judge Preston should not have tried the case. This is clearly not the same action or proceeding that Judge Preston's firm appeared in, and under the strict letter of the statute he was clearly not disqualified from hearing this case. If the precise issue presented here had in fact been a material issue in the partition case, and if Judge Preston's firm had been attorneys therein in fact, instead of nominally only, it might be said that the spirit of the statute is broad enough to disqualify. But it does not appear that the validity of the will in question could have been controlling in the other case. As we understand the record, the plaintiffs' claim there was that the deed from John Dodge to Eliza A. Glass conveyed only a life estate, and a determination of that question in no way involved the validity of John P. Glass' will.

Over the objections of the proponents, the court per-

mitted nonexpert witnesses to testify that shortly before the execution of the will, and at about the time that it was

2. MENTAL CA-
PACITY: evi-
dence.

executed, the deceased was of unsound mind, and incapable of intelligently transacting business or disposing of his property. While undue influence was charged, as well as incapacity, the real contest was on the latter ground; and there was evidence tending to show that the incapacity amounted to senile dementia, and had existed for a long time before the will was executed. The ultimate question for the jury to determine was whether the testator had sufficient mental capacity to dispose of his property by will at the time the instrument was executed, and this precise question was, in effect, answered by the witnesses to whose testimony we have referred.

So far as the questions and answers related to the time of making the will, or to a time so closely approximating thereto as to amount to the same thing, there was error in receiving the testimony, for the reason that the ruling permitted the witness to testify, in effect, that the testator was capable of making the will in question, and such testimony is incompetent under the rule of our own decisions and by the weight of authority. *Pelamourges v. Clark,* 9 Iowa, 1. But other questions of the same kind related to the testator's capacity at a time prior to the execution of the will, and the testimony so elicited, we think, was competent. Personal acquaintance, contact, and observation disclose the mental characteristics of persons, and from this association we form judgments as to the mental capacity of those with whom we come into such close relationship. A person may be entirely sound mentally on all subjects save one, and as to that particular subject his mind may be so diseased as to render it impossible to say that he is of sound mind. If a witness who is called to testify as to mental capacity is confined to the bare statement or conclusion that the person was either sane or insane, the answer is practically valueless as evidence of his capacity to do a certain act. But if the witness may

give his opinion as to the mental capacity touching the precise trait involved it affords material help to the jury or other trier. The true mental condition of a person cannot be understood by the trier unless the degree of his capacity be in some way disclosed. And the opinion of the witness that the person was capable of transacting ordinary business, and of intelligently disposing of property, is no more than a statement of his opinion as to his real mental condition. *Hayes v. Candee,* 75 Conn. 131 (52 Atl. 826). And see further, supporting this rule, *Keithley v. Stafford,* 126 Ill. 507 (18 N. E. 740); *Schneider v. Manning,* 121 Ill. 386 (12 N. E. 267); *U. S. v. Guiteau,* 47 Am. Rep. 247; *Ring v. Lawless,* 190 Ill. 520 (60 N. E. 881); *Jones v. Collins,* 94 Md. 403 (51 Atl. 398); *Poole v. Dean,* 152 Mass. 590 (26 N. E. 406); *Pinney's Will,* 27 Minn. 282 (6 N. W. 791, 7 N. W. 144); *Horah v. Knox,* 87 N. C. 483; *State v. McGruder,* 125 Iowa, 741. *Belts v. Betts,* 113 Iowa, 111, seems to announce a different rule, based on the case in 9 Iowa, *supra.* But that case did not go further than to hold that the testimony as to the capacity to make the will in question was incompetent. The Betts Case was in fact practically overruled in the case of *State v. McGruder, supra.*

It is most earnestly contended that there was no evidence of undue influence, and that the court erroneously submitted that question to the jury. It is seldom that such 3. UNDUE INFLU-ENCE: submission of issue. influence is capable of direct proof, and in cases where incapacity and undue influence are both relied upon to defeat the will, and there is substantial evidence of the testator's unsoundness of mind, any evidence, however slight, tending to prove the issue of an undue influence is freely admitted. The facts here are such that we cannot say, as a matter of law, that just inferences of such influence may not be drawn therefrom. If it be true that the testator was afflicted with senile dementia at the time he executed the instrument, he may have been easily influenced by those of his children who were with him

constantly, and who were present and assisted him in sign-
ing a will that had been prepared at their direction when
he was not present. Page on Wills, section 414, and cases
cited.

The question whether the trust deed previously executed
4. CONSTRUC-        was a part of the will was a question of law for
TION.
the court, and the court properly refused to submit it to
the jury.

The court erred, however, in instructing that it could
only be considered on the question of the testator's mental
capacity at the time he executed the will. The trust deed
5. EVIDENCE:     was made about three years before the will,
declaration of
decedent.        and at a time when the testator was concededly
in possession of his mental faculties, and was probably not
under the influence of others. It was therefore competent
as a written declaration of the decedent. *In re Estate of
Goldthorp,* 94 Iowa, 336; *Dye v. Young,* 55 Iowa, 433;
*Bever v. Spangler,* 93 Iowa, 576.

The trial court also instructed, in effect, that if the
deceased was afflicted with what is known as senile dementia,
affecting his capacity to make the will, the presumption
6. MENTAL IN-     would be that such condition continued up to
CAPACITY: pre-
sumption; bur-    the time that the will was made, and that the
den of proof.     burden of proof would then be on the propo-
nents to show a lucid interval at the time of the execution
of the will. This instruction we think wrong, because there
was testimony before the jury tending to show that senile
dementia was not necessarily a settled condition of the mind
that would render the testator incapable of intelligently
executing the will. The rule of law is that primarily every
person is presumed sane until the contrary is proved, and
it is also true that when unsoundness of mind is proved
to exist and to be settled a presumption then arises in favor
of its continued existence; but in this case no instruction
was given by the trial court embodying this thought, and
we think that it should have instructed the jury that they

must find a continued and settled mental unsoundness before indulging in the presumption stated by the court. *Kirsher v. Kirsher*, 120 Iowa, 337.

A great many other alleged errors are argued, but as none of them appear to be of consequence, and as the same questions are not likely to arise on another trial of the case, we need not notice them further than to say that we find no reversible error, unless it be in the cross-examination of Mrs. Madison as to a letter written by her, and in the attempted impeachment of Mrs. Murphy without first having laid a proper foundation therefor.

For the errors discussed the judgment must be reversed. The motion to tax the costs of the appellee's abstract to them is sustained, and the motion to tax a part of the appellants' abstract to them is sustained to the extent of taxing the cost of one-fifth thereof to the appellants.— *Reversed.*