RALPH WALDO PRESCOTT and Wallace M. Prescott, Plaintiffs, Contestants, and Respondents, v. F. E. MERRICK, as Proponent of the Will of William J. Morgridge, Deceased, Clara Allen, Stella J. Merrick, Emerson P. Merrick, Ruth M. Caufield, Walter D. Merrick, F. E. Merrick, and Delia F. Morgridge, Defendants and Contestees.

F. M. MERRICK as Proponent of the Will of William J. Morgridge, Deceased, Stella J. Merrick, Emerson P. Merrick, Ruth M. Caufield, Walter D. Merrick, and F. E. Merrick, Defendants, Contestees, and Appellants.

(179 N. W. 693.)

**Appeal and error — party adopting line of inquiry cannot predicate error on opposite party's adoption thereof.**

1. Where one party adopts a form of inqury for the purpose of eliciting cer-

tain facts, he cannot predicate error upon the adoption of the same form by the adverse party.

**Wills — questions by contestants as to mental capacity of deceased held not reversible error.**

2. Upon an issue of mental incompetency to make a will, the contestants asked witnesses who had observed the condition of the deceased whether or not in their opinion he had sufficient mental capacity to make a will, to know the disposition he was making of his property, and the beneficiaries. It is *held* that the inquiry in this form does not amount to reversible error.

**Wills — inquiry as to mental capacity may cover period before and after execution of will.**

3. Where there is ample evidence of permanent mental impairment following an apoplectic stroke, it is not necessary that witnesses should have seen the deceased at the date of the purported execution of the will in order to give testimony to his mental condition, as the range of inquiry may extend to a reasonable period before and after the execution of the will.

**Wills — questions to nonexpert witnesses, including date of alleged will, not reversible error.**

4. The inclusion of the date of execution in questions asked of nonexpert witnesses to elicit their opinions as to the mental competency of the deceased is not error, though the particular witnesses did not observe the deceased on that date.

Opinion filed September 28, 1920. Rehearing denied October 15, 1920.

Appeal from the District Court of Ramsey County, *A. G. Burr*, J. Affirmed.

*Adamson & Thompson* and *Fisk & Murphy*, for appellants.

The rule is that a nonexpert witness may not express an opinion of the condition of the mind of a person under consideration at a time other than when he saw him. Blake v. Rourke (Iowa) 38 N. W. 392; Speer v. Speer (Iowa) 123 N. W. 176; Danning v. Butcher (Iowa)

NOTE.—The result of the best considered cases on the subject of what constitutes testamentary capacity seems to put the quantum of understanding requisite to the valid execution of a will upon the basis of knowing and comprehending the transaction and its effect; that is, that the testator shall understand the extent of the property of which he is disposing, and the objects of his bounty, as will be seen by an examination of the cases collated in notes in 27 L.R.A.(N.S.) 2, and L.R.A. 1915A, 444, on the question what constitutes capacity or incapacity to make a will.

On opinion evidence by nonexpert as to the contractual or testamentary capacity of another, see note in 38 L.R.A.(N.S.) 591.

59 N. W. 69; 27 L.R.A.(N.S.) 294; 140 Am. St. Rep. 268; State v. McGruder, 101 N. W. 646; Dolan v. Henry, 177 N. W. 718; Runyan v. Price (Ohio) 85 Am. Dec. 468; Betts v. Betts, 84 N. W. 977.

A witness cannot be permitted to give his opinion in answer to an inquiry which embraces the whole merits of the case and leaves nothing for the jury to decide. DeWitt v. Barley, 17 N. Y. 347; Jameson v. Drinkald, 12 Moore, 148; Muldowney v. Ry. Co. 39 Iowa, 615.

In the case at bar the contestants so framed their questions by including the words "mental capacity" as to invade the province of the jury. Walker v. Walker, 34 Ala. 469; Kempsey v. McGinniss, 21 Mich. 123; White v. Bailey, 10 Mich. 155.

Neither an expert nor a nonexpert can state his opinion of the capacity of the testator to make a will when such opinion assumes the shape and has the effect of being an opinion upon the legal capacity of the party in question. Brown v. Mitchell, 36 L.R.A. 67; Fairchild v. Bascomb, 36 Vt. 398; May v. Bradlee, 127 Mass. 414; Walker v. Walker, 34 Ala. 469; Kempsey v. McGinniss, 21 Mich. 123; Gibson v. Gibson, 9 Yerg. 329; Runyan v. Price, 15 Ohio St. 1, 86 Am. Dec. 459; Schneider v. Manning, 121 Ill. 376; Farrell v. Brennan, 32 Mo. 328, 82 Am. Dec. 137; Clapp v. Fullerton, 34 N. Y. 190, 90 Am. Dec. 681; Hewlett v. Wood, 55 N. Y. 634; White v. Bailey, 10 Mich. 159; Re Blood, 62 Vt. 359.

*Wm. Anderson, Cuthbert, Smythe, & Wheeler,* and *Middaugh & Cuthbert,* for respondents.

As evidence of such capacity, it is settled that opinions of witnesses who know him are admissible, but only opinions founded on facts which must first be given to the jury that they may determine the weight to be given to the opinions founded on them. Dunham's Appeal from Probate, 27 Conn. 198; Potts v. House, 50 Am. Dec. 332; Barker v. Pope, 91 N. C. 168; Bricker v. Lightner, 40 Pa. 205; Wilkinson v. Pearson, 23 Pa. 117.

BIRDZELL, J. This is an appeal from a judgment in favor of the contestant in a proceeding to contest the purported will of William J. Morgridge, deceased. After a hearing upon the contest in the county court of Ramsey county, the document was admitted to probate, whereupon the contestants appealed to the district court demanding a trial

*de novo.* The issues framed were tried before the presiding district judge and a jury, resulting in a verdict that the document offered was not the last will and testament of William J. Morgridge. Judgment was entered upon the verdict. A motion for a new trial was subsequently made, which was overruled. There are appeals from the judgment and from the order denying the motion for a new trial.

The facts necessary to an understanding of the issues involved on the appeals in this court may be briefly stated as follows:

William J. Morgridge, a bachelor, had lived in Ramsey county for a number of years. During the period of his greatest activity in business affairs he was engaged in the mercantile business in the village of Grand Harbor. For about twelve years of that time prior to the year 1904 he was in partnership with one Fred E. Merrick. In 1904 Merrick severed his active connection with the business and thereafter Morgridge continued in sole charge until 1910 when he closed out and moved to Devils Lake, making his home at one of the hotels in that city. During the period of partnership association in business with Merrick, Morgridge lived in Merrick's home in Grand Harbor, in which he was treated practically as a member of the family. It seems that the relationship between Morgridge and the Merricks during this period was intimate and mutually satisfactory. After the dissolution of the partnership Merrick gave Morgridge a power of attorney, enabling Morgridge to transact business concerning the matters in which they both continued interested, and in addition to look after some farm lands which Merrick owned in Ramsey county. In December, 1915, Morgridge suffered a stroke of paralysis from the effects of which he never recovered. After this time he lived at the General Hospital in Devils Lake. The document in question was executed on November 23, 1917, and the deceased died February 1, 1919, being at the time between seventy and seventy-five years of age.

The deceased left property valued at approximately $80,000. The will provides for bequests as follows: $100 to Delia F. Morgridge, of Boston, Mass., a sister of the deceased; to a nephew, Ralph Waldo Prescott, $10,000; to one Clara Allen, of Boston, $100; to Stella Merrick of Medford, Oregon (wife of his former business partner, F. E. Merrick) $5,000; to Ruth Caufield, of Oregon City, Oregon (a daughter of F. E. and Stella Merrick), $1,000; to Walter D. and

Emerson P. Merrick (sons of F. E. and Stella Merrick), of Medford, Oregon, $1,000 each. The balance of the property was devised and bequeathed to the above-named persons in proportion to the amounts bequeathed in the will.

The contestants' answer to the petition for probate, after setting forth the heirship, alleges grounds for contest as follows: (1) The lack of mental capacity to make the will; (2) the lack of due execution; and (3) the existence of undue influence. The case was submitted to the jury under the first two issues.

There are a number of assignments of error based upon questions asked of a number of nonexpert witnesses. The question in the form objected to was first put to one, Baird, a banker with whom the deceased had had a number of business transactions, both before and after he was stricken. After laying a foundation showing Baird's acquaintance with and knowledge of the condition of the deceased during the period under examination, he was asked this question:

"Q. Now, Mr. Baird, from all your observations and experiences which you have related, would you say that William J. Morgridge had and possessed such sound mind, disposing mind and memory, and capacity that he could make a will on the 23d day of November, 1917?"

The question was objected to and the objection overruled, the witness answering:

"A. I do not believe he could make a will intelligently." Whereupon the following question was asked:

"Q. That is, you mean by that, you do not think he had the mental capacity to know what he was doing with his property or to whom he was disposing of it?"

"A. I do not think he did."

A similar question was put to a number of nonexpert witnesses who had at different times observed Morgridge's condition, but in the other instances the elements covered by the two questions above-quoted were combined.

The witness, Haley, who had known the deceased intimately during his lifetime and who had visited him at the hospital on a number of occasions, was asked the following question:

"Q. What would you say, Mr. Haley, from your observations, knowledge of the man and visits with him, hearing him talk and your

talking to him, as to whether or not he had sufficient mental capacity, soundness of mind and memory to make a will and to dispose, to know the disposition he was making of his property, and the beneficiaries under his will and the recipients of the property."

A similar question was put to Dr. Sihler, who treated the deceased professionally, who saw him more frequently than any other witness, and who was one of the witnesses to the will. He answered that in his opinion the deceased was incompetent at the time the will was made.

The appellant argues that these questions were improper for two reasons: First, they call for the conclusion of the witness as to the competency of the testator to make a will and thus involve both the question of mental capacity as a fact and the legal conclusion of competency which could only be drawn by the jury under proper instructions from the court; and, secondly, that the questions called for the conclusions of the various witnesses as to the existence of such capacity on November 23, 1917, the date of the will, without a foundation being laid showing that the various witnesses observed the condition of the deceased at that time.

In considering the assignments of error based upon the rulings on testimony above referred to, we do not wish to be understood as approving the form of the questions objected to to any greater extent than appears in the discussion to follow, which is necessarily limited to the circumstances in this particular case as mentioned below.

This case was tried in December, 1919. Upon the trial the proponents of the will introduced the deposition of Clark W. Kelly which was taken on October 10th, nearly two months before the trial. The witness was examined in chief by Mr. J. C. Adamson, as attorney for the proponents of the will. Upon inquiring with reference to the capacity of the testator, the question was put as follows:

"Q. Now, then, Mr. Kelly, basing your answer upon the specific conversations you had with Mr. Morgridge and the opportunity you had to observe him and listen to his talk and discussions and conversations which you had with him in October and in November, 1917, which you have testified to, you may state whether or not in your opinion Mr. Morgridge was, in the middle of November, 1917, of sufficient

mind and memory to execute a will and to dispose of his property and know what he was about at that time?"

This question was objected to by the attorney for the contestants on the specific ground that the witness had not shown himself competent to testify as to the mental requirements for a person to make a will. At the conclusion of the examination a motion was made to strike the answer for the same reason. A question substantially similar was asked of W. R. Merrick, in his deposition taken at Los Angeles a month before the trial. It will be seen that the questions asked by the proponents were in all substantial particulars in the same form as those asked by the contestants upon the trial, and it is a well-established rule that where one party adopts a form of inquiry for purposes of eliciting certain facts, he cannot predicate error upon the adoption of the same form by the adverse party. Montana Eastern R. Co. v. Lebeck, 32 N. D. 162, 155 N. W. 648; Wetzel v. Firebaugh, 251 Ill. 190–197, 95 N. E. 1085.

But aside from this consideration we are of the opinion that, in the circumstances presented in the instant case, it was not error to overrule the objections to the various questions asked of the witnesses for the contestants. The objection that the questions were so framed as to permit the witnesses to draw the legal conclusion which must be left to the jury under proper instructions presents a principle which has given rise to some difficulty in its application. The principle for which the appellants contend is clear enough. It is for the jury, and not for the witnesses, to say whether the deceased had the requisite capacity to make a will. Wigmore, Ev. § 1958. But the difficulty of presenting to the jury the condition of mind of a person whose competency is assailed is such that frequently it cannot be done to the best advantage without permitting the witness to state the condition in terms of conclusions. The witness must necessarily state a conclusion of capacity or lack of capacity from his own experience and judgment as to what constitutes capacity for doing certain acts. The fact that the law has defined the degree of capacity to perform the same acts should not, in itself, render the conclusion of the witnesses altogether incompetent where there is presented to the jury, as in the instant case, all of the facts from which the conclusion is drawn. It remains, nevertheless, the opinion of the witness as to the mental condition. For instance,

there is much testimony in the record before us to the effect that the deceased was slow to recognize even his most intimate friends; that at times he seemed to think that he did not have sufficient property to care for himself. The natural inference to be drawn from such testimony would be that he did not comprehend his property and the objects of his beneficence; from which it would follow that he had not the mental capacity to make a will. In the questions objected to, however, the legal definition of capacity to make a will was incorporated and the inquiry thus limited to the ability of the deceased to comprehend his property and dispose of it to beneficiaries. In these circumstances we are of the opinion that it was not error to overrule the objections to the questions. Macafee v. Higgins, 31 App. D. C. 355; Glass v. Glass, 127 Iowa, 646, 103 N. W. 1013; Searles v. Northwestern Mut. L. Ins. Co. 148 Iowa, 65–75, 29 L.R.A.(N.S.) 405, 126 N. W. 801; Dolan v. Henry, — Iowa, —, 177 N. W. 712. A question of the exact nature of those asked in the case at bar was upheld in Bost v. Bost, 87 N. C. 477. See also Horah v. Knox, 87 N. C. 483.

In so far as the questions call for the opinions of the witnesses as to the competency on November 23, 1917, regardless of whether or not the particular witness had observed the deceased on that date, they do not involve error.

The record shows that the deceased was suffering from a disease known as arterial sclerosis, and that in December, 1915, he suffered a stroke of apoplexy resulting in paralysis, from the effects of which he never recovered. There is much testimony going to show the degree and the nature of the mental impairment attendant upon the affliction of the deceased. And we may add that the witnesses differed greatly. From the nature of the deceased's condition, however, as testified to by the contestants' witnesses, it may well be inferred that, while there would be some variation in the mental power, a condition of constant or permanent impairment was shown, and where this condition is shown to exist the inquiry may extend to a reasonable period of time, either anterior or subsequent to the date of the execution of the will. Such evidence would afford a proper basis for the inference to be drawn by the jury as to the mental capacity at the time of the execution of the will. It may be true that it was technically improper to include in the question a date not covered by the observation of the par-

ticular witness; but it is clear that the proponents' case was not prejudiced by the inclusion of the date, for the jury had before it the observations upon which the opinions of the witnesses were based. Furthermore, the court in the instruction given specifically limited the evidence to the establishing of incompetency on the date of execution. This would have been the duty of the court if the date had not been mentioned in the questions. The inclusion of the date was harmless.

Additional assignments relating to the exclusion of evidence offered for purposes of impeachment seem to be without merit. The interest which the witnesses, particularly the witness Sihler, had in this contest proceeding was patent to the jury, and the matters concerning which impeachment was sought were clearly collateral, as they did not involve the interest of any witness, but only contradiction concerning purely foreign subject-matter. We do not deem it necessary to consider these assignments further.

It is apparent to us that a fair trial has been had, that all issues of fact have been properly submitted to the jury, and that their verdict is decisive. Finding no error in the record warranting reversal, the judgment and order appealed from are affirmed.