# WILLIAM A. POOLER

## *v.*

## PHILANY CRISTMAN *et al.*

*Filed at Ottawa, May 9, 1893.*

1. WILLS—*evidence as to testamentary capacity—husband's will and inventory of his estate.* On the contest of a will on the ground of a want of testamentary capacity and undue influence, the complainant offered in evidence the will of the husband of the testatrix, an inventory of his estate, and written articles of settlement between complainant and his sisters, the defendants, for the purpose of showing the amount of property the testatrix had when she made the will, which the court refused to admit: *Held,* no error in excluding the evidence, as neither the husband's will nor the inventory would show the property possessed by testatrix at the time she executed her will.

2. SAME—*report of executors of the estate of the husband of testatrix.* In such case the reports of the executors of the husband's will, and the receipts given by the testatrix, were competent evidence to show the amount the testatrix received from her husband's estate, if it was thought important to establish that fact. The husband's will, if admitted, might confuse the jury by bringing before them matters entirely foreign to the issue.

3. SAME—*extreme old age.* Extreme old age does not, of itself, disqualify a person from making a will. He may freely make his testament, however old he may be, since it is not the integrity of the body, but of the mind, that is required in testaments. Neither age nor sickness, nor extreme distress or debility of body, will affect such capacity if sufficient intelligence remains.

4. An instruction was given in substance that if the jury believe from the evidence that the testatrix was about eighty-six years of age when she executed the will, and suffering from bodily infirmity, such facts, standing alone, would not render her incapable of making a will: *Held,* that there was no error in giving such instruction at the instance of the proponents of the will.

5. SAME—*settlement by contestant with some heirs.* The fact that the contestant of the will had, before its execution, made a settlement with his sisters in relation to the estate of his father, the husband of the testatrix, whereby he received more of his father's estate than entitled to under his will, and that the testatrix consented to such settlement to avoid litigation, and paid a part of the money necessary to effect the settlement, would not, if shown, have any bearing on the testamentary capacity of the testatrix, or her ability to transact ordinary business.

6. SAME—*unequal distribution of the estate by will.* As a general rule, a person may dispose of his property by will as he may desire, and the validity of the will will not depend upon an equal distribution of the property among those who would inherit had no will been made, but the testator may give one child more than another without invalidating the will. But while this is true, inequality in the distribution of property may be considered as a circumstance tending to establish undue influence or unsoundness of mind, but it is not, of itself, sufficient for this purpose.

7. SAME—*former decision—not followed.* The expressions in the opinion in *Rutherford* v. *Morris*, 77 Ill. 414, to the effect that the reasonableness of the provisions of a will can not be considered on the question of undue influence or unsoundness of mind, not having been concurred in by a majority of this court, can not be regarded as authority.

8. SAME—*fraud, undue influence and mental incapacity.* On bill to set aside a will, on the grounds of mental incapacity and fraud and undue influence, the court, at the request of the proponents, instructed the jury as follows: "that the fraud and undue influence which would render a will invalid, must be connected with the execution of the will, and operating at the time the will is made:" *Held*, that the instruction, so far as is given above, was proper.

9. The instruction, after the first clause above quoted, proceeded as follows: "and the fact that the beneficiaries of a will are those by whom the testatrix was surrounded, and with whom she stood in confidential relations at the time of the execution of the will, or the fact that the principal beneficiaries had for years the control of her estate, or the fact that provisions of the will were for the benefit of such persons, or may seem unreasonable, yet such facts are not grounds for inferring undue influence; and in this case, if you believe from the evidence that the testatrix had sufficient mind and memory, at the time of the execution of the will in question, to know and understand the business in which she was engaged at the time she executed the will, and a recollection of the property she meant to bequeath, and of the persons to whom she meant to bequeath it, and that she executed the said instrument voluntarily, and of her own free will, then you should find by your verdict that the paper produced is the will of M. P." (the testatrix) : *Held*, that the second clause of the instruction, standing alone, was erroneous; but, as qualified by the last clause, it could not have misled the jury.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of DeKalb County; the Hon. HENRY B. WILLIS, Judge, presiding.

This was a bill in equity, brought by William Pooler, in the Circuit Court of DeKalb county, against Philany Cristman, Louisa C. Cristman, and Alonzo Ellwood, administrator with the will annexed of the estate of Margaret Pooler, deceased, to set aside the will of Margaret Pooler, deceased. William Pooler, the complainant, was a son, and Philany and Louisa C. Cristman, defendants, were daughters of the testatrix. It was, among other things, alleged in the bill that Margaret Pooler, of Cortland, DeKalb Co., Ill., now deceased, mother of complainant, did, December 23, 1887, at said town of Cortland, execute a written instrument purporting to be her last will and testament. That afterwards, April 15, 1891, she departed this life, leaving her surviving as heirs at law besides complainant, Philany Cristman and Louisa C. Cristman, both widows. That Henry Pooler, husband of said Margaret Pooler, had died prior to her death. That said purported will was as follows :

First, directs payment of debts.

Second. "I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of whatever kind or nature, to my daughters, Philany Cristman and Louisa C. Cristman, of said county, in equal portions, share and share alike; and in case of the death of either of my said daughters prior to my decease, the child or children of such deceased daughter to take the share such deceased daughter would have taken if living, share and share alike.''

Third clause names executors. It is alleged that said instrument was, on October 15, 1891, admitted to probate in the County Court of DeKalb county.

That at the time of the executing of said instrument the said Margaret Pooler was not of sound mind and memory, but on the contrary was in her dotage, and her mind and memory was so impaired as to render her wholly incapable of making any proper and just distribution of her estate,

408    POOLER *v.* CRISTMAN *et al.*

Statement of the Case.    Opinion of the Court.

and of comprehending the character and effect of any distributions she might make, or attempt to make, or which might be made for her, she being at the time of signing said paper writing, eighty-six years old, and by reason thereof had become childish and no longer comprehended the ordinary business affairs of life, and was incapable of transacting the ordinary business affairs of life in a proper manner.

That said Philany and Louisa C. Cristman, devisees, used and exercised many undue arts and fraudulent practices, and resorted to misrepresentations, and intimidated the said Margaret Pooler, to induce the said Margaret Pooler to execute the said instrument of writing, and the said Margaret Pooler, in executing the same, was in fact under improper restraint and undue influence from the said acts and fraudulent practices of said Philany and Louisa C. Cristman, and was intimidated by the said defendants, Philany and Louisa C. Cristman.

The defendants put in an answer to the bill, in which they deny the allegation that the testatrix was of unsound mind, or incapable of making a will. The defendants also denied any and all undue influence charged in the bill. An issue of fact was formed and submitted to a jury, and the jury returned a verdict in favor of the defendants. A decree was thereupon entered dismissing the bill, which, on appeal, was affirmed in the Appellate Court.

Mr. C. A. BISHOP, Messrs. CARNES & DUNTON and Mr. THOS. CLIFFE, for the appellant.

Messrs. JONES & ROGERS and Mr. CHAS. E. FULLER, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

During the progress of the trial complainant offered in evidence the will of testatrix's husband, Henry Pooler, an inventory of his estate, written articles of settlement be-

tween complainant and Philany and Louisa Cristman, to which it was claimed testatrix had assented. This offered evidence was objected to by the defendants; the objection sustained, and complainant excepted. This testimony was offered for the purpose of showing the amount of property the testatrix had at the time of making the will, and her ability to contract. The will of Henry Pooler, had it been read in evidence, would not show the property possessed by the testatrix at the time she executed the will, nor would the inventory establish that fact. The will by Henry Pooler had been probated in the County Court, and his estate had been settled, and the reports of the executor and the receipts executed by the testatrix would show fully and clearly the amount the testatrix received from her husband's estate, but for some unexplained reason this proof was not offered. We think the executor's reports on file in the County Court, and the receipts executed by the testatrix, might have been put in evidence, for the purpose of showing the amount of property which went to the testatrix from her deceased husband, if it was thought important to establish that fact; but the will of Henry Pooler, had it gone to the jury, would in all probability, have brought to the attention of the jury so many matters entirely foreign to the issue involved, that the jury might have been prejudiced by the offered evidence.

As respects the articles of settlement, the testatrix was not a party thereto. It seems that complainant, after the death of his father, claimed more than he was allowed by the will; after considerable negotiation between him and his two sisters, they bought from him his interest in his father's estate, paying a larger sum than he would have received by the terms of the will, and it was claimed that his mother, the testatrix, paid a portion of this amount from her own money, while she derived no benefit from the settlement; and this transaction, it is argued, was competent to show her incapacity to transact ordinary business. This settlement was so disconnected with and foreign to any issues

involved in this case, that we think it was properly excluded from the jury. What settlement the sisters of complainant may have made with him had no bearing on the testamentary capacity of the testatrix. Moreover, if she saw proper to aid her two daughters in making a settlement with complainant, which prevented a threatened law-suit over her husband's will, and paid money out of her own pocket for that purpose, we fail to see how that fact had any particular bearing on her testamentary capacity or her ability to transact ordinary business. Doubtless she thought it wise to pay money out of her own pocket rather than be involved in litigation over her husband's will, although she might be the loser financially through the transaction, and we do not think what she did was a proper subject of inquiry in this case.

It is next claimed that the court erred in giving defendant's tenth instruction, as follows:

"You are further instructed, that the mere fact that a person is of great age creates no presumption against the ability of such person to dispose of property by deed or will; and in this case, although you may believe from the evidence that the testatrix, Magaret Pooler, at the time of executing the paper in question was of about the age of 86 years, and suffering to some extent from weakness or bodily infirmity, yet such circumstances would not render her incapable of disposing of her property by will, as she saw fit."

Extreme old age does not, of itself, disqualify a person from making a will, for a man may freely make his testament how old soever he may be, since it is not the integrity of the body but of the mind that is requisite in testaments. Jarman, vol. 1, page 53. In *Van Alst* v. *Hunter*, 5 Johns. Chan., 148, where the testator was between ninety and a hundred years of age, when he executed a will, Chancellor Kent said: "The law looks only to the competency of the understanding, and neither age nor sickness nor extreme distress or debility of body will affect the capacity to make

a will if sufficient intelligence remains." In *Whitenack* v. *Stryker*, 1 Green Ch., 8, it was held that old age and failure of memory do not, of themselves, necessarily take away a testator's capacity. See, also, *Andress* v. *Weller*, 2 Green Ch., 605; *Stevens* v. *Vancleve*, 4 Nash C. C., 262; *Bird* v. *Bird*, 2 Hagg., 142; *McKenzie* v. *Handasyde*, 2 Hagg., 211. We think it is a plain proposition, and one too well established by both text writers and the decisions of courts, that old age does not, of itself, deprive a person of testamentary capacity.

The instruction may not be entirely free from criticism, but the substance of it is, that although the jury found from the evidence that the testatrix was eighty-six years of age when she executed the will, and suffering from bodily infirmity, such facts, standing alone, would not render her incapable of making a will. We do not see how the jury could be misled by this instruction, especially when considered in connection with the instructions given on behalf of the complainant, the ninth of which reads as follows:

"The jury are instructed, that in order to make a valid will, the law requires that a person shall be of sound and disposing mind and memory, as defined in these instructions; and want of testamentary capacity does not necessarily require that a person shall be insane; weakness of intellect, arising from old age or great bodily infirmity or suffering, or from all these combined, may render the testatrix incapable of making a valid will, when such weakness disqualifies her from knowing or appreciating the nature, effect or consequence of the act she is engaged in."

So also by complainant's eighth, the jury was directed as follows:

"The court further instructs you, that if you believe from the evidence in this case that Margaret Pooler, at the time of the execution of the will, was so diseased mentally that she was incapable, by reason of mental weakness caused by

disease, old age, or other derangement, of acting rationally in the ordinary affairs of life, and of intelligently comprehending the disposition she was making of her property, and the nature and effect of the provisions of said alleged will, then they should find that the writing produced is not the will of Margaret Pooler, deceased.''

It is also claimed that the court erred in giving defendants' first instruction as follows:

''The court instructs you, that the fraud and undue influence which would render a will invalid, must be connected with the execution of the will and operating at the time the will is made; and the fact that the beneficiaries of a will are those by whom the testatrix was surrounded and with whom she stood in confidential relations at the time of the execution of the will, or the fact that the principal beneficiaries had for years control of her estate, or the fact that the provisions of the will were for the benefit of such persons, or may seem unreasonable, yet such facts are not grounds for inferring undue influence; and in this case, if you believe from the evidence that the testatrix, Margaret Pooler, had sufficient mind and memory at the time of the execution of the will in question to know and understand the business in which she was engaged at the time she executed the will, and a recollection of the property she meant to bequeath and of the persons to whom she meant to bequeath it, and that she executed the said instrument voluntarily and of her own free will, then you should find by your verdict that the paper produced is the will of Margaret Pooler.''

The first clause of the instruction directing the jury that fraud and undue influence which should render a will invalid must be connected with the execution of the will and operating at the time the will is made, is sustained by *Bremfield* v. *Bremfield*, 43 Ill. 147; *Gould* v. *Hull*, 127 id. 525; *Ruchenbach* v. *Rudduch*, 127 Pa. St. 564. The principal objection is, however, directed to that portion of

the second clause of the instruction relating to the provisions of a will which may be unreasonable. As a general rule, a person may dispose of his property by will as he may desire; its validity does not depend upon an equal distribution of the property among those who would inherit had no will been made, but the testator may give one child more than another without invalidating the will. But while this is true, inequality in the distribution of property may be considered as a circumstance tending to establish undue influence or unsoundness of mind, but it is not, of itself, sufficient for this purpose. *Salisbury* v. *Aldrich*, 118 Ill. 199; *Schneider* v. *Manning*, 121 id. 385.

It is true, that in the opinion in *Rutherford* v. *Morris*, 77 Ill. 414, expressions may be found which might authorize that part of the instruction complained of. But what is said in *Rutherford* v. *Morris* was not concurred in by a majority of the court, and can not be regarded as authority. We think the second clause of the instruction, considered alone, erroneous; but the objectionable part of the instruction seems to be qualified by the last clause. The evident idea intended to be conveyed to the jury by the instruction, when the second and last clauses are considered together, would seem to be this: The fact that the provisions of the will may seem unreasonable, is not ground for inferring undue influence, providing "you believe from the evidence, the testatrix had sufficient mind and memory, at the time of the execution of the will, to know and understand the business in which she was engaged at the time she executed the will and a recollection of the property she meant to bequeath and of the persons to whom she meant to bequeath it, and that she executed the said instrument voluntarily and of her own free will."

While the instruction was drawn in an awkward manner, and should have been changed in its phraseology before it was given, we do not think the jury could be misled by it. Moreover, by complainant's twelfth instruction, the jury

were expressly directed that in determining mental capacity they had a right to look at the provisions of the will and could consider the history and relations of testatrix and complainant.

As respects the issue of fact presented to the jury but little need be said. Much evidence was introduced on the trial by the respective parties; the evidence was conflicting, and we are not prepared to say, after an examination of all the evidence, that the verdict is unsupported by the evidence. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*