JOHN ALEXANDER DOWIE *et al.*

*v.*

JOHN B. SUTTON *et al.*

*Opinion filed April 18, 1907.*

I. APPEALS AND ERRORS—*when appeal lies to Appellate Court in will contest case—effect as to facts.* Where a will disposes of personal property only, an appeal from a decree in a proceeding in chancery to contest the will lies to the Appellate Court, and that court's judgment is final as to controverted questions of fact to the same extent as in a suit at law, since the verdict of the jury in a will contest case is binding upon the chancellor the same as a verdict in a suit at law.

2. SAME—*when Supreme Court cannot consider whether there was any evidence tending to sustain bill.* In a proceeding in chancery to contest a will disposing of personal property only, if there was no motion, at the close of the evidence, for a peremptory instruction directing the jury to find for the defendants, the question whether there was any evidence fairly tending to sustain the bill is not preserved for review by the Supreme Court.

3. WILLS—*when letter is admissible as tending to show the testator's condition of mind.* Where one of the grounds for attacking a will is that the testator was suffering from an insane delusion, a letter written by the testator to his sister a few months before the will was made, showing that he believed that all women were attempting to poison him and that his sister was one of his "murderers," is admissible in evidence without extrinsic proof as to where it was written or of its having been sent to the party addressed.

4. SAME—*when instruction as to testamentary capacity is not improper.* An instruction in a will contest stating that in order to make a valid will the testator must, at the time he signs the same,

be capable of knowing what his property is, who are the natural objects of his bounty and be able to understand the nature, consequence and effect of his act; that all these elements must concur, and that the absence of any one of them will render the person incompetent to make a will, does not require the testator to hold all such elements in his mind at the same time, and is not improper.

5. SAME—*dominion over a testator which deprives him of free agency is wrongful.* An instruction in a will case stating that if a testator, at the time of executing the will, is "so far under the dominion of a person in whose favor he makes the will as to prevent the free exercise of his judgment, such testator is not, in the contemplation of law, of disposing mind and memory," is not erroneous in failing to use the word "wrongful" before "dominion." (*Yoe v. McCord,* 74 Ill. 33, explained.)

6. SAME—*person may have ordinary business capacity and yet be incapable of making a will.* A person may have sufficient capacity to attend to the ordinary business affairs of life and be without sufficient capacity to make a will if he has insane delusions with reference to the subjects connected with the testamentary disposition of his property and the natural objects of his bounty.

7. SAME—*when propriety of the will itself may be considered.* Where undue influence and the want of testamentary capacity are charged in a bill to contest a will, all of the surrounding facts, including the will itself, its propriety or impropriety, its reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, may be considered as bearing upon the issues so raised. (*Rutherford* v. *Morris,* 77 Ill. 397, criticised.)

8. PARTIES—*when church is not a necessary party.* Where a bequest for the benefit of an unincorporated religious sect, known as the Christian Catholic Church, is made to a named person and his successors, as overseers of the Christian Catholic Church, with full power to dispose of the estate in furtherance of the object of the bequest, the church itself is not a necessary party to a bill to contest the will; and if the church be regarded as a proper, formal party, the objection that it is not made a defendant to the bill must be made in the trial court.

9. COSTS—*costs may be awarded against an executor when will is set aside.* Where a will is set aside by a court of chancery it is proper to award the costs against the executor, who must look for re-imbursement to the beneficiaries in whose behalf the litigation was carried on.

APPEAL, from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

Appellees filed their bill in equity to the March term, 1903, of the circuit court of Cook county praying that an instrument in writing that had been admitted to probate as the last will of Frederick Sutton, and the probate thereof, might be set aside and declared null and void and that the estate of Frederick Sutton be distributed as intestate estate. Appellees, who are the heirs-at-law of Frederick Sutton, all reside in New Zealand, and appellants represent the Christian Catholic Church of Zion City, Lake county, Illinois, a religious sect of which John Alexander Dowie was the founder and general overseer. The instrument in question, and the codicil thereto, are as follows:

"*In the name of God, Amen.*—I, Frederick Sutton, late of Invercargill, New Zealand, but now of Chicago, Illinois, being of sound mind, memory and understanding, do therefore, in consideration of the uncertainty of this frail and transitory life, do hereby make, ordain, publish and declare this to be my last will and testament. I cancel and revoke all wills and testamentary dispositions heretofore made by me.

"*First*—I order and direct that my executor hereinafter named shall pay all my just debts, if any, and funeral expenses, as soon after my decease as possible.

"*Second*—I give, devise and bequeath the whole of my estate and effects, real and personal, movable and immovable, in possession, reversion, remainder and expectancy, wheresoever situated, nothing whatsoever excepted, unto John Alex. Dowie, the general overseer of the Christian Catholic Church, and to his successor and successors as such general overseer, absolutely and forever; and in order that my said estate and effects, etc., may be more effectively used for the good and furtherance of the Christian Catholic Church, I hereby authorize said John Alex. Dowie, his successor and successors, to sell, convey, pledge, mortgage, invest and re-invest, use and expend said estate and effects, etc., proceeds and income thereof, in such a way and manner as he or they may deem best.

"*Third*—I do hereby make, constitute and appoint John G. Speicher, of Chicago, Illinois, to be executor of this my last will and testament, and I do hereby request that he may not be compelled to give any bond or security as such executor.

"In witness whereof I· have hereunto subscribed my name and affixed my seal, and have also subscribed my name on the margin of this and the preceding page composing this will, this twenty-second day of March, in the year of our Lord one thousand nine hundred and two.

FRED. SUTTON.  (Seal.)"

"This intrument was, on the day of the date thereof, signed, published and declared by the said testator, Frederick Sutton, to be his last will and testament in the presence of us.  At his request we have subscribed our names thereto as witnesses, in his presence and in the presence of each other.

FRANK W. COTTON,          (Seal.)
1254 Michigan Avenue, Chicago.
WILBUR O. RUBY,          (Seal.)
1254 Michigan Avenue, Chicago."

"Codicil following on the will of me, Frederick Sutton, late of Invercargill, New Zealand, now of Chicago, Illinois, which will was duly executed by me on the twenty-second day of this month.

"After further consideration, and acting in the fear of God, in whose presence I may soon appear, I do give, devise and bequeath the following legacies: To my sister, Mrs. Nellie Edridge, (*nee* Sutton,) Yellow Bluff, New Zealand, the sum of one thousand pounds sterling; to my brother John B. Sutton, Fairview, Thornberry, New Zealand, the sum of five hundred pounds sterling; to my brother George Sutton, The Willows, Winton, New Zealand, the sum of five hundred pounds sterling; to my brother Charles Sutton, Drummond, Otago, New Zealand, the sum of five hundred pounds sterling.

"I direct the executor of my will, John G. Speicher, of Chicago, to carry out the provisions of this codicil, and declare and desire that it shall have the same force and effect as if contained in the said will.

"Dated at Chicago this twenty-fifth day of March, in the year of our Lord one thousand nine hundred and two.

FREDERICK SUTTON."

"Signed by Frederick Sutton, the testator of this will, in the presence of us, then present, both together, and affixing our signatures hereto as witnesses to the said will in the presence of the said testator.

FRANK W. COTTON,<br>1254 Michigan Avenue, Chicago, Ill.<br>WILBUR O. RUBY,<br>1254 Michigan Avenue, Chicago, Ill."

The testator died in Chicago, March 26, 1902, leaving an estate, consisting entirely of personal property, valued at $54,000. The will was admitted to probate in the probate court of Cook county February 9, 1903.

The appellees charge in their bill that the testator was not of sound mind and memory at the time of executing the instruments purporting to be his will, and the codicil thereto; that his mind and memory were so diseased and impaired as to render him wholly incapable of making a will; that the said pretended will and testament were written by John G. Speicher, who is named as executor in the will, and that he superintended and procured the signature thereto. It is charged that a close, confidential relation existed between the testator, Speicher, Dowie, Frank W. Cotton and Wilbur O. Ruby, the last two being witnesses to the said will; that said confidential relation grew out of the fact that Dowie, Speicher, Cotton and Ruby were ecclesiastical and secular officers of the Christian Catholic Church and professed to possess spiritual authority and the power of healing, and that the testator was then under their ministrations, both spiritually and physically, so that the said Dowie, Speicher, Cotton and Ruby sustained toward the tes-

tator both the relation of priest and physician, by reason of which each of them occupied a position of trust and confidence with the testator, and exercised a dominion over his will, judgment and actions to such an extent that the pretended will was really the expression of the will of Dowie, Speicher, Cotton and Ruby, and not the will of Frederick Sutton. The bill charges that the will was the result of undue influence exercised by these four persons over Sutton, which was acquired by reason of the confidential relations existing between them and the testator, and that in consequence the will is presumptively fraudulent and void. The bill also charges that the will was the result of undue influence and dominion in point of fact actually exercised over the testator by Dowie and Speicher. It is also alleged that the will was not executed in accordance with the provisions of the statute, for the reason that the witnesses were interested parties, alleging that the Christian Catholic Church was a voluntary association, not incorporated, and that the witnesses were the agents and servants and in the employ of Dowie and members or partners in the voluntary association, and that the bequest was to John Alexander Dowie in trust for the whole membership, and that such witnesses were therefore interested in the bequests contained in the alleged will. John Alexander Dowie, individually and as general overseer of the Christian Catholic Church, and John G. Speicher, individually and as executor, were made defendants and filed a joint answer, denying substantially all the material allegations of the bill.

Upon the filing of a replication an issue of law was made up to be submitted to the jury, as follows:

"*First*—Is the writing in question, purporting to be the last will and testament of Frederick Sutton, deceased, the last will and testament of said Frederick Sutton?

"*Second*—Is the writing in question, purporting to be a codicil to the last will and testament of Frederick Sutton, deceased, the codicil of said Frederick Sutton?

"*Third*—Was the said Frederick Sutton, at the time of the execution and attestation of the said writing in question purporting to be the last will and testament of the said Frederick Sutton, deceased, of sound mind and memory?

"*Fourth*—Was the said Frederick Sutton, at the time of the execution and attestation of the said writing in question purporting to be a codicil to the last will and testament of the said Frederick Sutton, deceased, of sound mind and memory?

"*Fifth*—Was there any undue influence exercised over the said Frederick Sutton that resulted in the making of said will?

"*Sixth*—Was there any undue influence exercised over the said Frederick Sutton that resulted in the making of said codicil?"

These issues were tried by a jury, and on October 1, 1904, the jury returned a verdict that the instrument offered in evidence as the last will and testament of Frederick Sutton, the deceased, is not the will of said testator and that the codicil offered in evidence is not the codicil of said testator. After overruling a motion for a new trial the court entered a decree in accordance with the verdict, from which an appeal was taken to the Appellate Court for the First District, where the decree of the court below was affirmed. By their further appeal proponents have brought the case to this court for review.

So far as the facts are necessary to a determination of the questions preserved for review in this court they are stated in the opinion, in connection with a discussion of the points to which they apply.

V. V. BARNES, CHARLES E. LAUDER, and P. R. BARNES, for appellants.

BULKLEY, GRAY & MORE, JULE F. BROWER, and SAMUEL B. KING, for appellees.

Mr. Justice Vickers delivered the opinion of the court:

*First*—Counsel for both parties have submitted extended briefs and arguments upon the questions of fact involved in the issue submitted to the jury. Presumably this course is pursued upon the supposition that these questions are open for review in this court. This is a misapprehension of the law applicable to this case. In a proceeding to contest a will by bill in chancery, when the will purports to dispose of real estate or real and personal property, the appeal lies direct to this court for the reason that a freehold is involved; but where the will only purports to dispose of personal property, as is the case here, the appeal goes from the trial court to the Appellate Court for the reason that a freehold is not involved. The appeal in the case at bar was properly taken to the Appellate Court.

The law is well settled in this State that when a will is contested by a bill in chancery and an issue of law is made up and submitted to a jury, as provided by section 7 of the Statute of Wills, the verdict of the jury has the same force and effect as a verdict on an issue of fact in a law case. In this respect chancery proceedings to contest wills are an exception to the general rule applicable to the trial of an issue of fact out of chancery by a jury. The general rule is, that the verdict of a jury on a feigned issue out of chancery is merely advisory to the chancellor, who may disregard the verdict and render a decree according to his own findings, or he may follow the verdict and base his findings thereon. (*Fanning* v. *Russell,* 94 Ill. 386.) But in cases of contests of wills in chancery the verdict of the jury is binding upon the chancellor. It has the same force and effect as a verdict at law. The chancellor may set aside the verdict and grant a new trial for cause, as in law cases, but he may not disregard it and enter a decree *non obstante veredicto,* as may be done on a feigned issue under the general chancery practice. (*Calvert* v. *Carpenter,* 96 Ill. 63; *Shevalier* v.

*Seager,* 121 id. 564; *Moyer* v. *Swygart,* 125 id. 262; *Entwistle* v. *Meikle,* 180 id. 9; *Greene* v. *Greene,* 145 id. 264; *Bradley* v. *Palmer,* 193 id. 15.) The effect of the verdict in such cases being the same as in cases at law, when a case is appealed to the Appellate Court and the decree is there affirmed the affirmance of such decree by the Appellate Court has precisely the same effect, as a final determination of the facts, as the affirmance by such court of a judgment at law.

In the case of *Long* v. *Long,* 107 Ill. 210, Mr. Justice Mulkey announced the effect of the affirmance of the decree by the Appellate Court, as follows: "The rule is well settled by the previous decisions of this court, that in contested will cases like the present the finding of the jury is conclusive unless clearly against the weight of evidence, (*Brownfield* v. *Brownfield,* 43 Ill. 147; *Meeker* v. *Meeker,* 75 id. 260; *Calvert* v. *Carpenter,* 96 id. 63;) and in this respect they are put upon the same footing with cases at law. Such being the case, it would seem to follow,—and we so hold,—the finding of the Appellate Court in conformity with the verdict of the jury is conclusive upon all questions of fact. Ordinarily the finding of facts by the Appellate Court in a chancery proceeding is not conclusive on this court; but this class of cases, under the construction given to our statute, does not fall within the general rule, but such cases are treated in this respect, as we have already seen, as actions at law."

There might have been a motion for a peremptory instruction directing the jury to find for appellants at the close of all the evidence, as held by this court in *Purdy* v. *Hall,* 134 Ill. 298, *Thompson* v. *Bennett,* 194 id. 57, and *Woodman* v. *Illinois Trust and Savings Bank,* 211 id. 578, which would have saved the question whether there was any evidence fairly tending to sustain the bill, but no such motion was made. Therefore the affirmance of the decree below by the Appellate Court having settled all controverted ques-

tions of fact in favor of the appellees, the only questions presented for our consideration are raised by exceptions to the ruling of the court on questions of law.

*Second*—The only ruling of the court as to the admission of testimony which is urged in this court as error was with respect to a certain letter which was shown to have been written by the testator to his sister, residing in New Zealand. From 1862 to August 12, 1901, the testator was a sheep raiser in New Zealand. The evidence shows that he was quite successful in this business, and that it was in this way he accumulated the fortune which was disposed of by the will in question. Testator was never married. He had three brothers and a sister living in New Zealand, and the descendants of a deceased brother, who are his heirs-at-law and appellees herein. It was one of the contentions of appellees below, to support which much evidence was introduced, that the testator was afflicted with a form of insanity known as paranoia, the principal characteristic of which is that the sufferer possesses insane delusions. One of the alleged delusions of the testator was, that he believed himself to be the object of constant and unrelenting persecutions by all women. He believed that all women were engaged in a conspiracy to destroy his life by poisoning because he had remained unmarried. Under the influence of this delusion the conduct of the testator as described by the witnesses is strangely absurd and irrational. It is not our purpose to rehearse the freakish manifestations of this mental malady. This condition had manifested itself in the conduct of the testator for a number of years prior to 1901, and his condition grew gradually worse. In 1901, apparently in the hope of ridding himself of his imaginary persecutors, he disposed of his sheep and sheep farm in New Zealand and on the 12th day of August he set sail for England, being careful to select a ship without a stewardess or any other woman on board. At Cape Town, South Africa, he seems to have encountered some trouble owing to war

regulations and was left at Cape Town. While here he wrote a letter, which is as follows:

"CAPE TOWN, *29th Oct. '91.*

"*Dear Nell*—I am stuck at Cape Town, owing to war regulations. They ordered me off the ship four minutes before she started and told me to be quick. I am so much persecuted with the women it is questionable if my constitution will stand it until I get through this bother and the journey by ships to England. If this murder by inches continues it will not be a long job now. What I write you more particularly for, is to let you know that I consider you as one of my murderers. There are, I should say, hundreds of them that have practiced this villainy upon me, that is cruelly and painfully killing me. If you want to go to hell you will get there unless you repent and get God's forgiveness, for if you did not drug me you had a guilty knowledge. You insult God by your villainy. By your actions you say he did not know how to make a man. Although you acted the drugging fiend to your own brother when he was at his wit's end to know where to turn to live, it is not my wish for you to go to hell but I hope you will forsake all sins and accept God's full salvation. My stomach is about poisoned to incapacity and kidneys affected. I don't expect ever to see you again. Your husbant's stomach was all off duity I suppose. He has had his share of woman's villainy. May God forgive you. If you know how hard it is to be gradually poisoned by inches you would count death a happy release. Good bye. Get rid of all your sins at our loving Saviour's feet.

"Your poor, three-quarters murdered, brother,

F. SUTTON.

"Tell the set of murdering knights that the job is about completed. I get weake day by day and can scarcely eat anything."

It is proved that the person addressed as "Dear Nell" was his only sister and that the letter was in the handwriting of the testator. The objection urged to this letter is, that it appears from the date of it that it'was written in 1891, but it is clear that the abbreviation '91 was a clerical error and was meant for 1901. This is shown by the fact that the testator was in Cape Town about October, 1901. There is no evidence that he was ever there at any other time, and by the further historical fact, of which the court will take judicial notice, that the Boer war was in progress during the year 1901. If the date of the letter was, as contended

227—13

by appellants, in 1891 instead of ten years later, we are not prepared to say that it would be for that reason inadmissible. Its remoteness from the time of the execution of the will might weaken its probative force, but it cannot be said that it would not be some evidence tending to prove the issue of insanity. But, as already observed, all of the surrounding circumstances show that there was a mistake in the date of the letter, and that it was, in fact, written only about a month before testator's arrival in Chicago and only a few months before the will in question was made.

It is further objected that the letter should have been rejected because there was no proof as to where it was written, or as to its ever having been sent to the party to whom it was addressed. This objection is not well founded. Whether it was sent to the person addressed, or where it was written, are matters that had no bearing upon the admissibility of the letter in evidence upon the issue of insanity. The issue being as to the state of testator's mind, what he did and said is original evidence bearing on that issue. It is the fact that the testator wrote the letter, and not the place where he wrote it, or the fact that it was sent to the person addressed or to any other person, that makes it competent evidence. There was no error in admitting this letter in evidence.

*Third*—It is insisted by appellants that the court erred in giving to the jury appellee's instruction numbered 3. That instruction is as follows:

"You are instructed that in order for a will to be valid the person making the same must, at the time of the execution thereof, be of sound mind and memory sufficient to understand, appreciate and be equal, mentally, to the task undertaken. In order to be of such sound mind and memory the person making such will must, at the time he signs it, be capable of knowing what his property is, who are the natural objects of his bounty, and be able to understand the nature, consequence and effect of the act of executing his

will. All of these elements must concur, and the absence of any one of them will render such person incompetent to make a valid will although all the other elements may be present; and if you believe, from the evidence, that the said Frederick Sutton, at the time of the execution of the said alleged will and codicil, was not capable of knowing who were the natural objects of his bounty, then and in that case you will find against the validity of the said alleged will and codicil; and if you believe, from the evidence, that the said Frederick Sutton, at the time of the execution of said alleged will and codicil, did not understand the nature or consequence of the execution of his will and codicil, then and in that case you must find against the validity of the alleged will and codicil. You are further instructed upon the subject of soundness of mind, that even where a testator is of sound mind at the time he signs or executes it, yet if he is so far under the dominion of a person in whose favor he makes the will as to prevent the free exercise of his judgment, such testator is not, in the contemplation of law, of disposing mind and memory. If you believe, from the evidence, that at the time of the execution of the alleged will in this cause Frederick Sutton was so far under the dominion of any person as to prevent the free exercise of his judgment, said Frederick Sutton was not, at the time aforesaid, in contemplation of law, of disposing mind and memory, and in that case your verdict must be against the validity of the will and in favor of contestants."

It is first objected that the above instruction presents a standard of mental capacity far above that which the law requires. This objection is based on the sentence, "all of these elements much concur, and the absence of any one of them will render such person· incompetent to make a will." The objection is to the concurrence of the several elements previously stated in the instruction, and it is argued that this expression is equivalent to telling the jury that the tes-

tator must have mental capacity sufficient to hold all these things in his mind at the same time, and the case of *Calvert* v. *Carpenter, supra,* is relied on in support of this objection, where an instruction which required the testator to be able "to hold all these things in mind at the same time" was condemned, and it is argued that the instruction under consideration is open to the same objection. The expression, "all of these elements must concur," does not mean the same as being able "to hold all these things in mind at the same time." The test of testamentary capacity laid down in the instruction,—that the testator must be capable of knowing what his property is, who are the natural objects of his bounty, and also be able to understand the nature, consequence and effect of the act of executing a will,—is not questioned by appellants. While it is not a proper direction to tell the jury that he must be able to hold all these things in his mind at the same time, yet it is proper to tell the jury that the absence of any one of these requirements would indicate a want of testamentary capacity. The meaning of the instruction in question on this point is simply that the jury were required to believe that the testator possessed the mental power to comprehend and understand all these elements at the time he executed the will. Manifestly, if he was able to remember his property but was incapable of knowing who the natural objects of his bounty were, he was not capable of making a will although he might be able to understand the nature, consequence and effect of executing a will; or if he was capable of knowing who were the natural objects of his bounty and the effect and consequence of making a will but was incapable of knowing what his property was, one of the elements of capacity would be absent and the will would fail. The effect of the instruction is to inform the jury that there must be a concurrence of all the elements in order to have testamentary capacity, and while it might have been more skillfully worded we do not think it was misleading in this respect.

It is next urged that the instruction is open to the objection that it undertakes to give a summary of facts and only recites such as are favorable to appellees. The instruction is not open to this criticism. There is no attempt to recite a summary of facts, but it tells the jury what the proper tests of mental capacity are, and that it is necessary that the proponents should prove them in order to sustain the will.

The third objection to the instruction is, that it does not qualify "dominion" by "wrongful," and a number of cases are cited where it has been held that it is not unlawful for a man, by honest advice or persuasion, to induce a testator to make a will or to influence the disposition of his property, and that such advice or influence will not vitiate a will when freely and voluntarily made from a sense of propriety, even though the will might never have been made but for such advice. Among the cases where this doctrine has been recognized by this court the following may be cited: *Yoe* v. *McCord,* 74 Ill. 33; *Sturtevant* v. *Sturtevant,* 116 id. 340; *Wilcoxon* v. *Wilcoxon,* 165 id. 454. The cases all agree that the influence which will vitiate a will must be a wrongful influence. The word "undue," when used to qualify influence, has the legal meaning of "wrongful." Hence "undue influence" means a wrongful influence. But influence secured through affection is not wrongful, and when a will is made in favor of a child at his solicitation and because of partiality influenced by affection for him it will not be undue influence. (*Dickie* v. *Carter,* 42 Ill. 376; *Brownfield* v. *Brownfield,* 43 id. 147; *Meeker* v. *Meeker,* 75 id. 260; *Burt* v. *Quisenberry,* 132 id. 385.) But the real test in all cases of this character is, did the influence deprive the testator of his free agency? (1 Redfield on Wills, 522; *Roe* v. *Taylor,* 45 Ill. 485.) An influence exerted over another which deprives him of his free agency and makes the will speak the will of another and not that of the testator cannot be other than wrongful, however ac-

quired. The influence of affection or partiality for a child, coupled with persuasion or solicitation, is not wrongful in the legal sense of the term, but would be if it went to the extent of depriving the testator of his free agency. (*Burt v. Quisenberry, supra; Francis* v. *Wilkinson,* 147 Ill. 370; *Wilcoxon* v. *Wilcoxon, supra.*) "Undue influence" is equivalent to wrongful influence, since it is said to be *undue* when it goes to the extent of depriving one of his free agency. But due influence or dominion alone does not meet the requirements of the rule, since influence or dominion may be either due or undue,—that is, either rightful or wrongful. The use of the word "dominion" in the instruction, alone, would not convey the rule of law to the jury unless it was limited to the kind of dominion that the law requires to vitiate a will. No objection is made to the use of the word "dominion" instead of "influence," but only to the omission of "wrongful" as a qualification of it. This objection, however, is met by the language that follows the use of the word, to the effect "if he (the testator) is so far under the dominion of a person in whose favor he makes the will *as to prevent the free exercise of his judgment.*" We think the element of wrongfulness is imparted to the word "dominion" by the qualification that it must go to the extent of depriving the testator of the free exercise of his own judgment. The instruction would have been better if the word "agency" had been used instead of "judgment," but the rule is sometimes stated in the substance of the words employed by the court in this instruction. In *Hall* v. *Hall,* 37 L. R. (1 Philip & Mary,) 481, Mr. Justice Wilde laid down the rule in the following language: "Importunity or threats such as the testator has not the courage to resist, moral command asserted and yielded to for the sake of peace and quiet or of escaping from distress of mind or social discomfort,—these, if carried to a degree in which the free play of the testator's judgment, discretion or wishes are overborne, will constitute undue influence, though no

force is either used or threatened. In a word, a testator may be led,—not driven,—and his will must be the offspring of his own volition and not that of another."

We are aware that in the discussion of an instruction by this court in *Yoe* v. *McCord, supra,* there are some expressions that do not seem to be in harmony with the views expressed here. In that case the instruction told the jury that if said "Yoe exerted such dominion and influence over said McCord [the testator] in reference to the making and execution of the alleged will in question, to such an extent as to substitute for the will said McCord designed and desired to make, and would have made if he had been left in the exercise of mental free agency, a will according to the views of said Yoe, then such latter instrument would not be entitled to probate, and the jury should find accordingly." While it was said of this instruction that it was erroneous in not embracing the element of fraud or wrong in the dominion or influence mentioned in the instruction, still it was not intended to lay down the rule that a dominion or influence that completely deprives a testator of all volition and substitutes the will of a dominant person for that of the testator is not both wrongful and fraudulent. Such has not been the rule in this State either before or since the decision in the *Yoe case,* and we do not think that the construction sought to be put upon the language of the court by appellants is warranted when the whole context of the opinion is read in the light of the facts then before the court. But even if the language in that case will bear no other construction than that an influence may be so powerful as to completely obliterate the will of the testator and result in a substitution of the will of another for the will of the testator and still at the same time not be an undue or wrongful influence, then the case must be regarded as having been overruled by the numerous later cases wherein the law is stated in accordance with the uniform rule, both in this country and in England, that undue influence or dominion

is such influence as deprives the testator of his free agency or volition. The latest case on this subject, so far as we are advised, is *Waters* v. *Waters,* 222 Ill. 26.

Instruction No. 14 is objected to. It is not contended that the instruction is incorrect as a statement of the law, but it is said there is no evidence to show that the insane delusions had any influence on the testamentary disposition made of his property by Frederick Sutton. This fact, the want of proof of which forms the basis of the criticism made on this instruction, is embraced in the facts necessarily found by the jury, and the affirmance of the judgment by the Appellate Court would constitute a complete answer to this contention. The failure of appellants to present a motion for a peremptory instruction waives the question whether there was evidence tending to prove all the essential facts upon which an adverse judgment must rest. But aside from this there is ample evidence in the record to justify the giving of this instruction.

Instructions numbered 15, 17, 18 and 22 are objected to. These instructions are as follows:

15. "If you believe, from the evidence, that although Frederick Sutton had sufficient capacity to attend to the ordinary business affairs of life, yet that with regard to subjects connected with the testamentary disposition and distribution of his property and the natural objects of his bounty he was insane, and while laboring under such insanity he signed the alleged will and codicil in question, and that in making and signing it he was so far influenced or controlled by such insanity as to be unable rationally to apprehend the nature and effect of the provisions of said alleged will and codicil, and was thereby led to make the alleged will and codicil as he did, then you must find the alleged will and codicil not to be the will and codicil of the said Frederick Sutton.

17. "You are instructed, as a matter of law, that undue influence in procuring the execution of a will which will

render a will so procured invalid, is any improper or wrongful constraint, machination or urgency of persuasion whereby the will of a person is overpowered, and he is induced to do or forbear an act which he would not do, or would do, if left to act freely. And if you believe, from the evidence in this case, that such undue influence was exerted over Frederick Sutton by any person at the time he executed the alleged will and codicil involved in this suit, then and in that case it is your duty to find against the validity of such alleged will and codicil and return a verdict that the same is not the will and codicil of said Frederick Sutton.

18. "You are instructed that where a person of sound mind or memory is not subject to constraint or undue influence he may dispose of his property by will as he sees fit. But where undue influence or want of testamentary capacity is charged, as they are in this case, all of the surrounding facts, including the bequests themselves, their propriety or impropriety, their reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, may be considered in determining whether the testator was, at the time of the execution of the alleged will and codicil, of sound mind and memory or whether the alleged will and codicil was procured by undue influence.

22. "You are instructed that direct evidence of undue influence in procuring the execution of a will is not required to prove the existence of such undue influence. Proof of undue influence may be made by evidence of facts from which the inference of the existence of such undue influence may naturally and reasonably be drawn, and if you believe, from the evidence, that any fact or facts are proved from which the inference may fairly and reasonably be drawn that the alleged will and codicil of Frederick Sutton was procured by undue influence operating upon him at the time of the execution of the said alleged will and codicil, then and in that case it is your duty to find that said alleged will and codicil is not the will and codicil of Frederick Sutton."

The objections to instruction 15 are, that it is not in harmony with instructions 4 and 5 given on behalf of appellees. There is no conflict in these instructions. Instruction 15 informs the jury that the testator might have had sufficient capacity to attend to the ordinary business affairs of life and yet at the same time be without sufficient capacity to make a will, if he was insane with reference to the subjects connected with the testamentary disposition of his property and the natural objects of his bounty. This instruction was based on the appellees' theory of the case that Frederick Sutton was the victim of certain delusions that influenced him in the making of the will in question, and it was proper for the court to instruct the jury in accordance with the theory of both parties and leave the jury to determine the fact upon which the instructions were, respectively, predicated.

Instruction No. 17 is criticised for one of the reasons urged against instruction No. 3 and which has been disposed of, but it will be seen by an examination of the instruction now under consideration that it is not open to the objection urged to No. 3. It is also said that this instruction should not have been given because there was no evidence upon which to base it. This objection cannot be sustained.

The principal objection to instruction No. 18 is, that the instruction tells the jury that in determining the question of undue influence or want of testamentary capacity the jury might take into consideration all the surrounding circumstances, including the bequests themselves, their propriety or impropriety, their reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, and the case of *Rutherford* v. *Morris,* 77 Ill. 397, is relied upon as authority. It is true that language may be found in *Rutherford* v. *Morris, supra,* which might appear to sustain appellants' contention, but that case was decided by a divided court, and that part of the opinion which seems to support appellants' contention here does

not appear to have been concurred in by a majority of the court. Four of the justices filed a special concurrence agreeing to the result but not concurring in all that was said, while one of the justices dissented. (*Pooler* v. *Cristman,* 145 Ill. 405.) The language relied upon by appellants is regarded now by this court as practically overruled by the case of *Pooler* v. *Cristman, supra.* (See *England* v. *Fawbush,* 204 Ill. 384.) The principle of the instruction now under consideration has been often approved. It is the well established rule of law in this State that a person of sound mind and memory and subject to no undue influence may dispose of his property by will in any manner that he sees fit. He may give it to his kindred or he may bestow it upon strangers, and the fact he makes one disposition rather than another of his estate does not have any tendency to impeach the validity of his will. If he is competent to make a will at all and is free from undue influence, the propriety or impropriety of his testamentary disposition is a matter with which the courts and juries have no concern. But while this is well settled, it is equally clear, under the decisions of this court, that where want of testamentary capacity, undue influence or fraud is charged, then all of the surrounding facts, including the will itself, its propriety or impropriety, its reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testator, may be considered as bearing upon the issues thus raised. *McCommon* v. *McCommon,* 151 Ill. 428; *Graham* v. *Deuterman,* 206 id. 378; *Piper* v. *Andricks,* 209 id. 564; *French* v. *French,* 215 id. 470.

The objection to instruction No. 22 is too refined to be readily apprehended. It is said: "If the instruction had used the word 'positive' instead of 'direct,' it might, by straining a point, have been held good. All evidence of any value must be direct evidence to be admissible at all." We fail to see any force in this objection. It is true that some writers on the law of evidence use the word "posi-

tive" in the sense of affirmative as contradistinguished from negative facts; (1 Best on Evidence, sec. 13;) but, so far as we are advised, all the books treat direct evidence and indirect or circumstantial evidence as a rational and elementary classification which is too well understood to require discussion. (See 1 Best on Evidence, sec. 27; 1 Elliott on Evidence, sec. 14; Starkie on Evidence, 19.)

*Fourth*—Some argument is presented on the point that since the bequest was clearly for the benefit of the Christian Catholic Church as the beneficiary, the church should have been made a party defendant to the bill. The bequest was to John Alex. Dowie and his successors, as overseers of the Christian Catholic Church. No trust is expressed and full power to dispose of the estate in furtherance of the object of the bequest is given to Dowie and his successors. Had the church been made a party it would have been impossible to serve it except by serving Dowie, as the head official and representative. It was not possible to serve the entire membership, which is stated to be 250,000, scattered all over the world. We fail to see any force in this suggestion. Besides, if the church was a proper party it would only be a formal and not a necessary party, (*American Bible Society* v. *Price*, 115 Ill. 623,) and this being true, the objection should have been taken in the court below. It can not be raised for the first time in the Appellate Court.

*Fifth*—Error is assigned on the decree awarding costs against the executor. The estate of Frederick Sutton can not be drawn on to reimburse the appellants for their expenditures in the unsuccessful effort to uphold the will. The executor must look to the beneficiaries, in whose behalf he has carried on the litigation, for his costs. The Appellate Court properly disposed of this question under the authorities cited.

Finding no error in this record, the decree below and the judgment of the Appellate Court for the First District are affirmed.

*Judgment affirmed.*