CHRISTOPHER WETZEL et al. Appellants, vs. NELLIE E. L. FIREBAUGH et al. Appellees.

Opinion filed June 20, 1911—Rehearing denied October 12, 1911.

1. WILLS—it is not necessary that sanity witnesses shall have talked with testatrix about her property or relatives. The fact that witnesses testifying to the mental capacity of the testatrix conversed with her only upon common subjects of conversation and did not talk with her about her property or relatives does not disqualify them from giving their opinions as to her sanity and mental capacity.

2. SAME—question for jury is whether testatrix was competent to make the particular will. The question to be decided by the jury in a will contest case, when lack of mental capacity is charged, is whether the testatrix was mentally competent to make the particular will, and it is proper for the jury to consider the nature of the will, the extent of the estate and whether there are many or few details in its disposition; but this is a question for the jury and not for the witnesses.

3. SAME—sanity witnesses need not know the contents of the will. The law fixes the degree of capacity required to make a valid will, and it is the proper function of the court to advise the jury as to the rules of law, but it is not proper for witnesses, whether experts or not, to give opinions as to whether the testatrix was capable of understanding the business she was engaged in when she executed the will; but where both parties interrogate their witnesses on that point, neither can complain.

4. SAME—interest which will disqualify witness must be certain and direct. The test of interest which determines the competency of a witness in a will contest case is whether he will gain or lose as the direct result of the suit; and the interest must be certain, direct and immediate, as otherwise it goes merely to the credibility of the witness and not to his competency.

5. SAME—when a legatee is not disqualified to testify for contestants. The fact that a legatee under the will has been promised by the contestants the amount of his legacy, or more, if they are successful, does not disqualify him as a witness for the contestants; but the court's action in refusing to allow him to testify is not ground for reversal, where there is nothing in the record to indicate that he could have testified to any fact of importance.

6. SAME—when husband of testatrix is not competent to testify. The husband of the testatrix is not competent, in a suit to contest the will, to testify to any fact or transaction the knowledge of

which was obtained by means of the marriage relation, including conversations with the testatrix in his presence, during the mar-. riage, testified to by other witnesses.

7. SAME—*wife of legatee is not a competent witness.* The wife of a legatee is not a competent witness in a suit to contest the will, as she is not competent to testify either for or against her husband.

8. SAME—*it is not proper for attorney in a case to testify, although he may do so.* An attorney who, in fact, takes an active part in the case though his name is not entered of record as an attorney in the case, should not testify as a witness; but he is not for that reason incompetent, and if he chooses to testify he may do so, but his testimony should be given but little weight.

9. SAME—*contestants cannot prove appointment of conservator some years after execution of will.* In a suit to contest a will on the ground of want of mental capacity the contestants are not entitled to prove that a conservator was appointed for the testatrix two years after the execution of the will.

10. SAME—*when admitting contract in evidence is not ground for reversal.* A contract between the testatrix and the chief devisee, whereby the former was to live with the latter, who was to care for her, bury her at her death, pay all bills and have all the property, is competent only on the question of undue influence and not on the question of mental capacity; but its admission in evidence is not reversible error, where the bill charged undue influence by the chief devisee, even though there was nothing in the evidence to sustain the charge.

11. INSTRUCTIONS—*when instructions as to right to dispose of property are not misleading.* Instructions stating that if the testatrix possessed testamentary capacity and was free from undue influence she could dispose of her property as she saw fit, and that the jury should not be influenced by any belief that the will was not such as they thought she ought to have made, are not misleading, even though the jury are entitled to consider any intrinsic evidence afforded by the will of want of mental capacity to make it, where the jury were also advised that they should consider the amount and nature of the property, the various relatives and friends of the testatrix, and all the facts.

APPEAL from the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding.

A. P. LANDESS, and ELTING & HAINLINE, for appellants.

FLACK & LAWYER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of McDonough county entered a decree upon the verdict of a jury dismissing for want of equity the bill of complaint filed in that court to set aside the probate of the last will and testament of Ellen Wetzel, deceased, and to declare said will null and void, and from that decree this appeal was prosecuted.

The bill was filed by the surviving husband and a brother of the testatrix and a number of her nephews and nieces, and the defendants were a niece, (who was executrix and a devisee,) a nephew and a legatee. The grounds upon which the validity of the will was challenged were, that the testatrix, at the time of executing the will, was not of sound mind and memory, and that she was under improper restraint and undue influence exercised by her niece, the defendant Nellie E. L. Firebaugh.

The following facts were proved at the trial: The testatrix was married in 1858 to William Culp and lived with him on his farm near Bushnell, in McDonough county, until his death, which is variously stated by witnesses to have occurred at dates between 1880 and 1891. There were no children of the marriage, and she inherited as heir an undivided half of the quarter section, which constituted the farm, and also had dower and homestead in the premises. She purchased the remaining interest in the quarter section and afterward acquired two dwelling houses in the city of Bushnell, and occupied or rented her real estate until her death. On November 4, 1896, she was married to Christopher Wetzel, one of the complainants, and they lived in Bushnell most of the time after the marriage. The testatrix sold the west half of the farm, leaving eighty-one acres, which she owned when the will was made, together with the two dwelling houses in Bushnell, and she also had

money in a bank. In May, 1905, she went with her husband and her niece, Nellie E. L. Firebaugh, to visit her brother, Rankin McClaren, in Indiana, and remained there until the latter part of July. The will was made on July 26, 1905, and in the morning of that day she went to the house of her niece, Nellie E. L. Firebaugh, and wanted the niece to go with her to the office of a lawyer to have her will drawn. The niece could not go at that time but agreed to go at one o'clock if the testatrix would wait. The testatrix finally concluded to wait and remained there to dinner and at about one o'clock they went to the lawyer's office. The testatrix gave directions for the making of a will, and the attorney who drew it testified that nothing was either said or done by the niece in reference to it. There was no contradictory evidence and nothing tending to prove undue influence. By the will the testatrix provided first for the payment of her debts and funeral expenses, and then gave to her brother, Rankin McClaren, whom she had recently visited, $1500 if he should be living fifteen months after her death, which the attorney told her would be the time that the estate would be closed. He died before the testatrix, so that the bequest lapsed. She next gave to the defendant Manning Culp (who was not a relative, a boy raised by her and her first husband,) one of the pieces of property in Bushnell, but this property was sold in her lifetime under some arrangement between the devisee and her. She then gave to said Manning Culp $500, to be paid to him in installments of $100 each year, and she devised the other piece of property in Bushnell and all the residue of her estate to the niece, Nellie E. L. Firebaugh. She separated from her husband in 1907 and went to live with Mrs. Firebaugh, and died on May 28, 1910. She was seventy years old when she made the will and seventy-five years old at the time of her death, and never had any child. The proponents of the will offered it in evidence, together with the certificates of the oaths of the

251 — 13

subscribing witnesses, and also examined a large number of witnesses, including the nearest neighbors of the testatrix, her banker and his cashier, an insurance agent who insured her property, an assessor who took her assessment, the ministers of her church, and some relatives who visited her frequently. They all testified to her soundness of mind, and their testimony, if true, established beyond question her ability to make a will.

The contestants produced quite a number of witnesses, by whom the following facts were proved and which were not disputed: In 1904 the testatrix, while attending the World's Fair at St. Louis, became overheated, and during the last ten days of July and the first three weeks in August she was treated by a physician at her home in Bushnell for cystitis, which is inflammation of the bladder. The physician visited her two or three times later and his treatment covered a period of about five weeks. He testified that when he questioned her in regard to her symptoms and the conditions attending the physical trouble there was an absence of decision in making up her mental processes; that her answers were hesitating and undecided; that she was not actively delirious but was confused a considerable portion of the time. After the overheating she frequently complained of a pain in her head and during part of the time wore a wet cloth around it. Afterward, and covering the period when the will was made, she was forgetful, and would ask the same question in a short time after it had been answered. A fair illustration is an occasion when she made a call of twenty minutes upon a neighbor and asked how old the little boy was, and after being told asked the same question again before she left and said he was a bright little fellow. Sometimes she did not recognize acquaintances and did not recognize a nephew who was passing along the street, and upon inquiring and being told, asked if it was possible she did not know him. Sometimes she recognized the tenant on the farm when he called and some-

times she did not, but there was no evidence that she did not understand everything that was said to her or that there was any want of understanding of her business affairs. She consulted with her husband about her business but acted for herself. This was the entire scope of the evidence which is claimed to show a want of mental capacity to make a will, and it is scarcely enough to raise an inference against the will in the absence of contradictory testimony. Unless the record contains material and prejudicial error the decree must necessarily be affirmed.

It is argued that many of the witnesses testifying to the mental capacity of the testatrix were not qualified to give opinions for the reason that they did not hear her say anything about her property or relatives, and therefore could not say that she knew the extent or nature of her property or who were the natural objects of her bounty, and objections of that kind were made upon the trial. If it is true of the witnesses in support of the will it is equally true of those who testified for the contestants. The witnesses on both sides talked with the testatrix, when they met, upon the common subjects of conversation between neighbors and friends. It is not to be expected that the testatrix, when calling upon other women or being visited by them, would talk about other subjects than the weather, their health, their housekeeping experiences, flowers, gardens, and other matters that interested them. The witnesses were not disqualified to give opinions as to the sanity and mental capacity of the testatrix because she did not discuss with them business affairs or her relatives.

The contestants also objected to the giving of opinions by witnesses for the proponents as to the competency of the testatrix unless they had first read the will and knew its contents, and in examining witnesses on their own behalf asked them if they had read the will and knew its provisions, and whether in their opinion the testatrix had sufficient mind and memory to understand the business of mak-

ing this particular will. The court did not agree with the solicitors for contestants, and ruled that the opinions of the witnesses should relate to ability to make a will and not this particular will. The issue submitted to the jury was whether the writing produced was the last will and testament of the testatrix, and the question to be decided by the jury was whether she was competent to execute that will. The business in which she was engaged at the time of making the will was the disposition of her property by that instrument, and it was necessary that she should be capable of knowing what her property was and who were the natural objects of her bounty and be able to understand the natural consequences and effect of the act of executing the will. (*Dowie* v. *Sutton,* 227 Ill. 183.) In solving those questions the jury could take into consideration the nature of the will, the extent of the estate, whether there were many facts and details in the disposition to be made of the estate or whether there were but few simple details. (*Campbell* v. *Campbell,* 130 Ill. 466; *Taylor* v. *Pegram,* 151 id. 106; *Dillman* v. *McDanel,* 222 id. 276; *Healea* v. *Keenan,* 244 id. 484.) But it was not proper for witnesses to put themselves in the place of the jury. Questions put to witnesses whether the testatrix was able to understand the business in which she was engaged when she made this will or able understandingly to execute it, simply called for conclusions of the witnesses as to testamentary capacity, and amounted to an attempt to put the witnesses in the place of the jury and allow them to determine the very question which the jury had been sworn to try. (*Schneider* v. *Manning,* 121 Ill. 376; *Pyle* v. *Pyle,* 158 id. 289; *Baker* v. *Baker,* 202 id. 595.) It was proper for the parties to furnish the jury with all the facts relating to the extent of the estate and the number and situation of the relatives as well as with the opinions of witnesses touching the sanity and mental capacity of the testatrix, but the court was right in sustaining the objections to questions

calling for opinions on the issue submitted to the jury. Both parties interrogated their witnesses on the question whether the testatrix had sufficient mental capacity to understand the business she was engaged in, of making a will, and this was improper. The law fixes the degree of capacity required to make a valid will, and it is the proper function of the court to advise the jury as to the rules of law, and it is not proper for witnesses, whether experts or not, to give opinions whether a person was capable of executing a valid will. (*Garrus* v. *Davis,* 234 Ill. 326.) As both parties followed the improper practice, neither is entitled to complain of that method of examination.

The contestants offered as a witness for all purposes,—and especially as a witness to conversations with the testatrix, in his presence, during the marriage, testified to by other witnesses,—the surviving husband, Christopher Wetzel, and the court held that he was incompetent. He was incompetent to testify to any fact or transaction the knowledge of which was obtained by means of the marriage relation. *Schreffler* v. *Chase,* 245 Ill. 395.

The contestants also offered as a witness Manning Culp, the legatee under the will. The proponents, by leave of court, examined the witness to show that he had an agreement with the contestants that if the will was set aside he would be paid an amount equal to his legacy, or more. The witness said that the contestants had told him he should be an heir if the will was set aside, and the court held him incompetent because he was interested in the result of the suit. The test of interest which determined the competency of this witness was whether he would gain or lose as the direct result of the suit. The interest must be a legal interest in the event of the suit which is certain, direct and immediate, as otherwise it goes merely to the credibility of the witness and not to his competency. (*Illinois Mutual Fire Ins. Co.* v. *Marseilles Manf. Co.* 1 Gilm. 236; *Campbell* v. *Campbell, supra; Pyle* v. *Pyle, supra.*) The fact

that Culp had a prospect of gaining something from the contestants if they were successful affected his credibility and not his competency. The ruling was wrong, but there is nothing in the record to indicate that he could have testified to any fact of importance, and his exclusion as a witness is not ground for reversing the decree. His wife, May Culp, was also offered as a witness and excluded, and in this the court did not err, for the reason that she was not competent to testify either for or against her husband.

Solon Banfill was presented as a witness by the proponents, and the contestants interposed an objection to his competency on the ground that he was a solicitor in the suit. The court overruled the objection and he testified generally, not only to the execution of the will, which he drew and of which he was a witness, and what occurred in his office at the time, but also to the competency of the testatrix. His name was not entered of record as a solicitor in the case but he was one in fact. He had been the chief solicitor in consulting with the witnesses and securing testimony and sat at the trial table with the other solicitors, consulting with them and taking an active part in the trial. An attorney voluntarily assumes that relation in each case, and if he is to be a witness he places himself in the position of an interested party unnecessarily. It is not proper for him to do that, and but little weight should be given to the testimony of a witness who is not only acting as an attorney but also furnishing evidence to enable him to succeed in his professional capacity. (*Wilkinson* v. *People,* 226 Ill. 135; *Bishop* v. *Hilliard,* 227 id. 382; *Grindle* v. *Grindle,* 240 id. 143.) The question, however, does not relate to competency but only to credibility, and the ruling of the court was not wrong.

The contestants attempted to prove that a conservator was appointed for the testatrix two years or more after the will was made, and the court excluded the evidence, which

was in accordance with the decision in *Entwistle* v. *Meikle,* 180 Ill. 9.

The court admitted in evidence, on the part of the proponents of the will, a contract between the testatrix and Mrs. Firebaugh, made in January, 1898, by which Mrs. Firebaugh was to care for the testatrix if she became ill or widowed and to attend to her business. The testatrix was to reside in the home of Mrs. Firebaugh as one of the family, and Mrs. Firebaugh was to settle all bills, bury the testatrix beside her former husband, and have all her property at her death. This contract would only have been competent on the question of undue influence at the time the will was executed and had no tendency to prove capacity to make the will. There was nothing in evidence tending to prove undue influence, but it was one of the charges of the bill and may have been the subject of argument to the jury. The fact that the contract was admitted in evidence would be no ground for reversing the decree.

Objection is made to instructions numbered 3 and 9, which advised the jury that if the testatrix was possessed of testamentary capacity and free from undue influence she could dispose of her property as she saw fit, and that the jury should not be influenced by any belief or feeling that the will was not such as they thought she ought to have made. The jury had a right to take into consideration any intrinsic evidence afforded by the will of a want of mental capacity to make it, and the court told the jury that in determining the question they should take into consideration the amount and nature of her property, her various relatives and friends and all the facts. The instructions objected to stated a correct rule of law, and when the instructions are taken together they could not have misled the jury.

We have noticed every objection presented in the brief and argument which is worthy of attention and find nothing which would justify reversing the decree. Accordingly it is affirmed.

*Decree affirmed.*